94 A.3d 956

COMMONWEALTH of Pennsylvania, Appellant

v.

Junius BURNO, Appellee.

Commonwealth of Pennsylvania, Appellee

v.

Junius Burno, Appellant.

Supreme Court of Pennsylvania.

Argued May 10, 2011.

Submitted Nov. 4, 2013.

Decided June 16, 2014.

Heather F. Gallagher, Esq., James Bernard Martin, Esq., Lehigh County District Attorney's Office, for Commonwealth of Pennsylvania, Appellant in Case No. 559 CAP.

Daniel Silverman, Esq., Silverman & Associates, P.C., for Junius Burno.

Heather F. Gallagher, Esq., Lehigh County District Attorney's Office, David J. Mussel, Esq., for Commonwealth of Pennsylvania, Appellee in Case No. 46 EAP 2009.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.

## OPINION

Justice STEVENS.[1]

The Commonwealth appeals from the trial court's September 30, 2009 order granting Junius Burno a new trial based on his trial counsel's alleged ineffective representation in failing to object to remarks made by the prosecutor during her closing argument to the jury. Burno has filed a cross-appeal claiming the trial court erred in refusing to grant him relief on numerous remaining issues, which he raised in his post-sentence motions. We reverse the trial court's September 30, 2009 order granting Burno's motion for a new trial, remand for the resolution of any pending preserved claims related to trial court error raised in Burno's post-sentence motion, and dismiss Burno's claims of ineffective assistance of trial counsel without prejudice to his right to pursue those collateral claims under the PCRA.[2]

## I. *Background*

The evidence at trial revealed the following facts: On April 13, 2003, Mary Meixell Moyer telephoned the police complaining she heard gunshots fired next door at 2628 South 4th Street in Allentown. Upon arriving at the scene, Allentown Police Officer Scott Derr discovered blood on the residence's

---

1. Following the filing of this Court's November 4, 2013 *per curiam* order, in which we *sua sponte* directed the matter be resubmitted for consideration on previously filed briefs, this case was reassigned to this author. The case had been held internally pending this Court's filing in *Commonwealth v. Holmes*, 621 Pa. 595, 79 A.3d 562 (2013).

2. Post Conviction Relief Act, 42 Pa.C.S. §§ 9541–46 ("PCRA").

front steps and on the back of a sign located on the porch. The front door of the residence was ajar, and the inside lights were on when Officer Derr entered the residence to perform a security check. Officer Derr discovered two homicide victims inside the residence and obvious signs that a struggle had taken place within the residence. One of the victims was found lying on his back in the doorway leading to the bedroom, while the other victim was found in the back of the bedroom curled up in a fetal position. Officer Derr secured the scene and waited for detectives from the Criminal Investigation Division to arrive.

Subsequently, the first victim, who was found in the bedroom doorway, was identified as Carlos Juarbe, the lessee of the residence, and the second victim was identified as his friend, Oscar Rosado. Detectives processed the scene and spoke to witnesses. Specifically, when questioned, Ms. Moyer informed the police that, immediately after hearing gunshots, she saw two men flee the area in a red or maroon compact car with its headlights turned off. The detectives found a trail of blood leading from Juarbe's apartment to the spot where Ms. Moyer saw the car drive away from the area. The detectives recovered various blood samples, shell casings from a nine-millimeter luger, both jacketed and unjacketed lead projectiles, and a sawed-off 12–gauge double barreled shotgun containing one live shell and one spent shell of bird shot.

The blood evidence, which the detectives recovered from the scene, led the police to Terrance Bethea, who the police arrested on September 12, 2003, and charged him with murder. Bethea voluntarily gave a statement to Detectives Simock and Miller, admitting that he and Junius Burno were inside of Juarbe's residence when the two victims were shot and killed. Bethea also admitted that one of the victims shot him, and he and Burno fled from the scene in Burno's car.

Later, on the same day, police interviewed Bethea's wife, who informed them that Burno and Bethea arrived together at her house during the early morning hours of April 13, 2003, and Bethea had a shotgun wound. Neither Burno nor Bethea would tell her how or why Bethea was shot. All three

proceeded to a hospital in Philadelphia to seek medical treatment for Bethea, and while at the hospital, Bethea gave hospital personnel, and subsequently the police, a false name, false birth date, and false information about how he had been shot.

Thereafter, Detectives Simock and Miller contacted the Lansford Police Department, and based on information provided by that Department, the detectives determined that Burno owned a car, which matched Ms. Moyer's description of the vehicle that fled the scene of the double homicide. On the evening of September 12, 2003, Burno turned himself into the Allentown Police Department, and he was arrested. The next day, the Commonwealth filed a criminal complaint charging Burno with, *inter alia*, two counts of criminal homicide, and thereafter, the Commonwealth gave timely notice of its intention to seek the death penalty.

Subsequently, Burno gave several conflicting statements to the police. For instance, he initially gave the police a statement claiming he and Bethea were innocent bystanders who were visiting Juarbe when two armed intruders entered the residence, and Bethea was shot when he got caught in the crossfire between Juarbe and the intruders. However, on September 24, 2003, Burno gave the police a taped statement in which he admitted to some involvement with the crime. Burno explained during the taped statement that, some months prior to the killings, Bethea had informed him that he obtained two handguns when he burglarized his neighbors' apartment. One of the handguns was a nine-millimeter model, which Bethea gave to Burno. He also explained that, in April of 2003, when he took his ex-wife, Michele Wright, medicine for their daughter, he stole a .38 caliber handgun from underneath Ms. Wright's bed. Burno claimed he drove Bethea to Juarbe's residence on the night in question in order to trade the .38 caliber handgun for drugs and money, and he remained in the car at all times. Burno further claimed in his taped statement that he heard two gunshots and then saw Bethea emerge from Juarbe's residence with a leg wound. Burno

asserted he disposed of the stolen guns after he transported Bethea to the hospital in Philadelphia.

On September 26, 2003, Burno gave a third statement to the police in which he confessed that he and Bethea went to Juarbe's residence to rob him of drugs and money. In this third statement, Burno admitted he entered Juarbe's residence, he struggled with Rosado, and he shot Rosado in the bedroom with the nine-millimeter handgun. This version was consistent with the trial testimony of David Rawlins, a jailhouse informant who testified pursuant to a plea deal that Burno had provided him with a detailed account of the murders. According to Rawlins' testimony at Burno's trial, Burno claimed that he came to Bethea's aid after Bethea was shot in the leg and he shot Rosado after Rosado dropped to his knees, pleading for his life. Moreover, while jailed in the Lehigh County Prison, Burno made several telephone calls, which were recorded, admitting to his ex-wife and an acquaintance, James Alford, that he was involved in the shootings.

Dr. Samuel Land, a forensic pathologist who performed an autopsy on Rosado, testified that Rosado died of a gunshot wound to the head. The bullet entered his left ear and then severed the jugular vein and carotid artery as it proceeded downward into the body. Based on the trajectory of the bullet, Dr. Land opined that the gunman was above Rosado at the time of the shooting. Another forensic pathologist, Dr. Sara Lee Funke, performed an autopsy of Juarbe, and she observed eleven gunshot wounds, three of which were fatal chest wounds. Dr. Funke recovered from Juarbe a total of five bullets, which were of two different types. She testified the first type was a leaded, non jacketed projectile, which entered Juarbe from both contact and non-contact wounds, as indicated by the presence or absence of injury to the skin surrounding the point of entry. She concluded that the contact wounds and the positions and trajectories of their entries were consistent with a struggle between the victim and the assailant. She further testified that the second type of bullet recovered from Juarbe, the jacketed ammunition, did not enter through a contact wound. Finally, she noted that, in

considering the trajectory of the bullets, with regard to at least one of Juarbe's wounds, the shooter was elevated higher than Juarbe.

A ballistics expert, Pennsylvania State Police Sergeant Eric Wolfgang, analyzed the ammunition recovered from the scene and concluded two guns were utilized during the shootings inside of Juarbe's residence. He testified the jacketed bullets came from a nine-millimeter handgun and the non jacketed bullets were a .38 Special multi-ball type of ammunition, which was compatible with the gun Burno had stolen from his ex-wife.

Burno took the stand in his own defense and recounted the sequence of events contained in his second police statement, *i.e.*, he claimed that he gave the stolen .38 caliber handgun to Bethea and remained in the car at all times. He claimed he did not know anyone had been killed inside of Juarbe's residence until the next day when he saw a news report about the shooting. Burno maintained he gave a statement falsely implicating himself in Rosado's murder because he was afraid of the death penalty, and his attorney warned him that Bethea would likely blame him for both murders. In rebuttal, the Commonwealth produced a fourth statement made by Burno that had been previously suppressed by the trial court on Sixth Amendment grounds. This fourth statement contradicted Burno's trial testimony and indicated that Burno had, in fact, shot both Juarbe and Rosado.

At trial, James Alford, the acquaintance to whom Burno had confessed in the recorded prison telephone call, denied any knowledge of Burno's involvement in the shootings. However, Alford admitted that, on April 13, 2003, the night of the murders, he received a telephone call from Burno asking if he could borrow Alford's vehicle, which was larger than Burno's vehicle, to take Bethea to the hospital. Alford described how they then exchanged vehicles. Alford acknowledged at trial that he subsequently gave a taped statement to police in which he indicated that, when the men exchanged vehicles on April 13, 2003, Burno admitted to his participation in the death of

Juarbe and Rosado. However, at trial, Alford contended his statement to police was "fabricated."

The Commonwealth additionally introduced at trial testimony from Bethea's neighbor, Paul DeMaria, who indicated he had a nine-millimeter handgun, a stereo, and phone stolen from his home only days after informing Bethea that he would be out of town for a few days. Another neighbor, who lived with DeMaria, testified she later observed the stereo and phone in Bethea's residence.

On March 5, 2007, the jury found Burno guilty on two counts of first-degree murder, 18 Pa.C.S. § 2502(a). On March 6, 2007, the jury found one aggravating circumstance and the mitigation catchall, and determined that the aggravating circumstance outweighed the mitigating, thus sentencing Burno to death. *See* 42 Pa.C.S. §§ 9711(d)(11) (an aggravating factor for death sentence purposes exists where "[t]he defendant has been convicted of another murder committed in any jurisdiction and committed either before or at the time of the offense at issue."); [3] (e)(8) (mitigating circumstances for death sentence purposes includes "[a]ny other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense.").

On March 12, 2007, Burno's trial attorneys, Mark S. Refowich, Esquire, and Victor E. Scomillio, Esquire, filed a motion to withdraw their representation, citing differences of opinion between Burno and counsel that rendered it impossible for counsel to zealously represent Burno post-sentence. Simultaneously, Burno's trial attorneys filed on behalf of Burno a post-sentence motion, which presented allegations related to alleged trial court error, insufficiency of the evidence, weight of the evidence, and excessiveness of sentence. Further, in the post-sentence motion, Burno's trial attorneys requested the trial transcript be produced, permission to supplement the post-sentence motions upon receipt of the transcript, and a hearing.

---

3. The aggravating factor arose from the jury convicting Burno of first-degree murder with regard to both Rosado and Juarbe prior to the penalty phase.

By order entered on August 7, 2007, the trial court granted Burno's trial attorneys' motion to withdraw their representation and appointed new counsel, Daniel Silverman, Esquire, to represent him. Thereafter, Attorney Silverman filed unopposed motions for leave of court to file an amended post-sentence motion, which the trial court expressly granted, and on May 20, 2008, he filed an amended post-sentence motion presenting a litany of allegations of ineffective assistance of counsel during the guilt and penalty phases, as well as claims of alleged trial court error, insufficiency of the evidence supporting the guilty verdict, and weight of the evidence related to the guilty verdict.[4]

From February 10, 2009, to February 12, 2009, the trial court held an evidentiary hearing. By order and opinion entered on September 30, 2009, the trial court, upon consideration of Burno's post-sentence motion, granted Burno's request for a new trial and vacated his judgment of sentence. Specifically, in its opinion, the trial court, as a threshold matter, indicated that Burno had presented numerous claims of ineffective assistance of trial counsel. With regard to the trial court's ability to address the ineffectiveness claims in light of the then current procedural posture of the case and existing law, the trial court explained the following:

> Because [Burno] has raised claims of ineffective assistance of counsel, as a threshold matter, it must be acknowledged that such claims are normally withheld until collateral review proceedings. *See Commonwealth v. Grant* [572 Pa. 48], 813 A.2d 726, 738 (Pa.2002). However, as recognized in *Commonwealth v. Bomar* [573 Pa. 426], 826 A.2d 831, 853–54 (Pa.2003), ineffective assistance claims are, in certain circumstances, cognizable within the chain of the direct challenge to the verdict. *See also Com[monwealth] v. Chmiel* [585 Pa. 547], 889 A.2d 501, [540] 613 (Pa.2005) (explaining [*Bomar* ] to hold that claims of counsel ineffectiveness reviewed in post-sentence proceedings were prop-

4. As the trial court noted, in his post-sentence motion, Burno presented no less than forty-five claims for the trial court's consideration. *Commonwealth v. Burno*, No. CP–39–CR0003637–2003, *slip op.* at 9 (C.P. Lehigh County, Sept. 30, 2009).

erly raised, preserved, and addressed in trial court). Here, with the matters fully briefed, argued, and addressed by successor defense counsel in post-sentence proceedings, the issue of effective assistance of counsel is ripe for determination of whether 'there is [arguable] merit to [Burno's] underlying claim,' whether trial counsel had a 'reasonable basis for his course of conduct,' and whether 'there is a reasonable probability that but for the act or omission in question, the outcome of the proceedings would have been different.'

*Commonwealth v. Burno*, No. CP–39–CR0003637–2003, *slip op.* at 10 (C.P. Lehigh County, Sept. 30, 2009).

After noting the three-prong test to be applied in determining whether trial counsel was ineffective as set forth in *Strickland*, and adopted by *Pierce*,[5] the trial court turned to an examination of Burno's claim that trial counsel was ineffective in failing to object to the prosecutor's summation. Specifically, the trial court examined whether trial counsel was ineffective in failing to object to the following excerpts from the prosecutor's closing argument, in which the prosecutor (1) made reference to Burno's other crimes and bad acts to refute Burno was a "good family man," and (2) argued, as a matter of fact, that Burno cowardly shot Juarbe while he was down on the ground:

Now, Burno's statements. He is in jail, arrested, and he is afraid. He talks on these tapes about the chess game[,] about gambling. He is afraid Terrance [Bethea] is going to talk.

So what does he do? He jumps. He talks first, and on September 24th of 2003, he gives that statement, the same one he told you about here in the courtroom.

5. To establish trial counsel's ineffectiveness, the defendant must demonstrate: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for the course of action or inaction chosen; and (3) counsel's action or inaction prejudiced the petitioner. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987).

It's unreasonable, ladies and gentlemen, but he is sticking with it, because what else are you going to do once you confess? Recant, go back, take it back.

He wants you, while he is sitting up there on the stand, and throughout his statement, to believe the best of him, to believe that he is a good family man. It's a lie.

Was he a good family man when his daughter was having her tonsils out, and he went to Michele Wright's apartment; ransacked it; read her journal, stole her journal?

Was he a good family man when he and Terrance Bethea went into the DeMaria's apartment, and burglarized it and stole guns? Is he a good family man the night of these murders when he and Terrance went out doing coke, and drinking, and out all night with their guns, like tough guys?

Is he a good family man that is willing to go down for a double homicide that he didn't commit? That's unreasonable. Unreasonable that you would be willing to do that for a man that you had just gotten back into contact with a few months before the murders. The same man, by the way, that you were willing to X out of your life over some parking tickets, Bethea.

Now are you going to do all of this to help him out, and stand by him, and go down for a double murder that you didn't commit? Unreasonable.

\* \* \*

So yes, we confronted Junius Burno about his lies. And then what happened? He confessed, and he said, I had the nine[-millimeter]. I finished off Carlos [Juarbe], and I shot Oscar [Rosado].

He still wants you to believe that he is a pretty nice guy, and that he really didn't mean it. But forensically, none of that adds up. [']It was dark in the room when I shot Oscar [Rosado]. I couldn't really see him.['] What did the first responder tell you? The lights were on.

[']I was—I guess I went in the bedroom. I really didn't remember going into the bedroom, but I guess [I] did. And

D [6] jumped on him, and then he threw him off. And I shot him when he went to get up.['] Forensically, couldn't have happened. The coward shot him while he was down on the ground. I know that. Fact.

&ast;　　&ast;　　&ast;

I am standing before you now, and I am asking you, tell him there is no game. Tell him there is no chess; there is no gambling. It's over. The lies are done. Find him guilty of murder in the first degree for Carlos Juarbe, and guilty of murder in the first degree for Oscar Rosado.

N.T., Trial, 3/5/07, at 764–765, 769–770, 776–777 (footnote added).

With regard to the *Strickland/Pierce* "arguable merit" prong, the trial court recognized that a prosecutor must be given reasonable latitude in presenting her case to the jury, and prosecutorial misconduct will not be found where the prosecutor's comments are based on the evidence or proper inferences therefrom. *See Commonwealth v. Thomas*, 618 Pa. 70, 54 A.3d 332 (2012), *cert. denied*, —— U.S. ——, 134 S.Ct. 173, 187 L.Ed.2d 119 (2013). Nevertheless, the trial court concluded the aforementioned excerpts from the prosecutor's summation constituted prosecutorial misconduct, i.e., prejudiced the jurors by forming in their minds a fixed bias and hostility toward Burno, thus impeding the jury's ability to weigh the evidence objectively and render a true verdict. *See Commonwealth v. Bond*, 539 Pa. 299, 652 A.2d 308 (1995). Specifically, as it relates to the prosecutor's references to Burno's prior crimes and bad acts to demonstrate Burno is not a "good family man," the trial court indicated, in relevant part, the following:

> [T]he admission of evidence of other crimes and bad acts is allowed for purposes expressly exclusive of either those relating to the character of [Burno] or an attempt to prove that he probably acted similarly in committing the crimes charged in the present case. Notwithstanding that limitation, however, the prosecution's closing argument highlight-

6. The record reveals "D" was Carlos Juarbe's street name.

ed the various misdeeds of [Burno] in order to impugn his
character. In essence, the residual message left with the
jury amounted to a contention that [Burno] was not a man
of good character; therefore, he should not be believed.
Moreover, in consideration of the manner in which the
argument was presented, the jury may well have inferred
that because [Burno] was not a good family man, but
instead did drugs, drank alcohol, and committed crimes on
other occasions, he was likely to have perpetrated these
murders. Indeed, the panel was virtually invited to do so.

&ast; &ast; &ast;

Accordingly, by repeatedly interjecting into her closing
argument the claim that [Burno] was not a 'good family
man' on the basis of other 'bad acts,' the prosecutor over-
reached and introduced impermissible considerations into
the jury's fair and impartial evaluation of the evidence in
this matter. As a consequence, the jury was left to infer
that because [Burno] had engaged in other wrongs at other
times, he was a bad man and likely acted 'in conformity'
with his previous misdeeds when he participated in the
killings of Juarbe and Rosado.

*Burno*, No. CP–39–CR0003637–2003, *slip op.* at 15–16, 19–20.

The trial court next noted it found "[s]imilarly troubling"
the fact the prosecutor personally vouched for the credibility
of certain evidence in urging the jury to disregard Burno's
explanation of events, particularly when the prosecutor stated
that "[t]he coward shot him while he was down on the ground.
I know that. Fact." *See Burno*, No. CP–39–CR0003637–2003,
*slip op.* at 20. The trial court opined that the prosecutor's
statements went beyond proper "oratorical flair," and, instead,
"ventured onto prohibited terrain as an improper expression
of 'a personal belief as to [Burno's] guilt or innocence' and an
unwarranted personal assessment of [Burno's] credibility."
*Burno*, No. CP–39–CR0003637–2003, *slip op.* at 20. Thus, the
trial court concluded Burno's claims, related to his allegation
trial counsel was ineffective in failing to object to the chal-
lenged portions of the prosecutor's summation as set forth
*supra,* possessed "arguable merit."

Turning to the remaining prongs of the *Strickland/Pierce* test, the trial court summarily held:

Other than to recognize counsel's natural reluctance to object to closing argument out of a sense of professional courtesy, there is no rational basis to explain the failure to object to the prosecutor's improper argument. In any event, even if an objection had been timely lodged, it is not at all apparent that a curative instruction could have salvaged the jury's ability to weigh the evidence objectively. *Cf. Commonwealth v. Ragan* [538 Pa. 2], 645 A.2d 811, 824 (Pa.1994) (mere argumentative and unwise comments that do not prejudice outcome do not warrant new trial especially where trial court immediately instructs jurors to disregard remarks). And with that taint hanging over the jury's ultimate determination, particularly in a case in which capital punishment is at stake, the verdict in this matter simply cannot be reconciled with the dictates of due process and notions of fundamental fairness upon which our system of justice is rooted. *See Commonwealth v. Mitchell* [576 Pa. 258], 839 A.2d 202, 214 (Pa.2003) ('If there is a reasonable possibility that the error may have contributed to the verdict, it is not harmless.'). A new trial must be had.

\* \* \*

As a final note, it will be observed that overturning this conviction is troublesome. By his own repeated admissions, [Burno] was in one manner or another involved in the slaying of two persons. However, the determination of whether his role was limited to manning the getaway car in the aftermath of the killings or whether he was, in fact, in Juarbe's apartment and harbored the intent to kill the victims hinged in large measure on circumstantial evidence and which of [Burno']s various statements the jury decided to believe. The problem is that the prosecutor overreached. She introduced two additional factors for the jury to consider, both of which were improper and highly prejudicial. Her private assessment that [Burno] had lied and her derogation of his character as being less than a 'good family man' posed the very real possibility that the jury's delibera-

tions were diverted from an impartial consideration of the evidence properly admitted.

Under our system of criminal justice, it has long been recognized that the prosecuting attorney 'is the representative not of an ordinary party to a controversy, but of a sovereignty ... whose interest ... in a criminal prosecution is not that it shall win a case, but that justice shall be done.' *Com[monwealth] v. Basemore* [560 Pa. 258], 744 A.2d 717, 731 n. 12 (Pa.2000) (quoting *Berger v. United States*, 295 U.S. 78, 88 [55 S.Ct. 629, 79 L.Ed. 1314] (1935)). The concept of justice, precisely because it is so important and fundamental, does not readily lend itself to pity definition. However, an abiding principle of our jurisprudence has been the recognition that when the procedure of adjudicating a defendant's rights becomes compromised, fairness is not possible, and without fairness there can be no justice. In short, to have confidence that justice has been done, the procedure utilized to achieve it must be fair. That was not the case here; therefore, [Burno's] conviction and sentence must be vacated so that a fair trial can be had.

*Burno,* No. CP–39–CR0003637–2003, *slip op.* at 20–21, 24–25 (citations omitted).

Thus, concluding Burno met all three prongs of the ineffectiveness test as it relates to trial counsel's failure to object to the challenged portions of the prosecutor's summation, the trial court vacated Burno's judgment of sentence and awarded him a new trial on this sole basis. The trial court noted that, since it was awarding Burno a new trial, it was unnecessary to reach Burno's remaining claims of error or ineffective assistance of counsel.[7]

7. However, the trial court suggested it generally found meritless Burno's challenges to the introduction of "other crimes and bad acts evidence" relating to him drinking beer, smoking marijuana, snorting cocaine, and driving under the influence of drugs and alcohol on the day in question, as well as evidence suggesting he conspired with Bethea to store stolen goods, lied to the police, lied to the Pennsylvania Department of Transportation, stole his ex-wife's keys, was told by his ex-wife not to "get into any more trouble," and uttered profanities at the police. *Burno,* No. CP–39–CR0003637–2003, *slip op.* at 9–10. The trial court concluded "all of the 'other' bad acts cited by [Burno] were

The Commonwealth filed a timely notice of appeal to this Court, and Burno filed a timely protective cross-appeal.[8] On appeal, the Commonwealth challenges the trial court's grant of a new trial to Burno on the basis trial counsel was ineffective in failing to object to the challenged portions of the prosecutor's summation as set forth *supra*. Specifically, the Commonwealth presents the following two issues, which we set forth verbatim:

1. Is the lower court's determination that trial counsel was ineffective for not objecting to the prosecutor's closing argument clearly erroneous because the underlying claim lacks arguable merit?

2. Is the lower court's determination that trial counsel was ineffective for not objecting to the prosecutor's closing argument plainly erroneous because [Burno] was not prejudiced?

Commonwealth's Brief, Statement of Questions Involved, at 3.

In his protective cross-appeal, Burno presents the following nine issues, which we set forth verbatim:

1. Were [Burno's] statutory and constitutional rights to a speedy trial violated where trial commenced 663 days after the Commonwealth filed an improper interlocutory

relevant to establish opportunity, plan, identity, or intent, or, alternatively were appropriately admitted for the limited purpose of presenting the jury with the complete story of the chain of events resulting in [Burno] murdering Juarbe and Rosado and then attempting to cover up his crimes." *Burno*, No. CP–39–CR0003637–2003, *slip op.* at 11. Moreover, the trial court noted that, as it relates to Burno's challenges to the trial court's failure to suppress Burno's out-of-court police statements, as well as challenges Burno raised in pre-trial motions, no relief was due and it was relying on its previously filed opinions on the issues. Further, as it relates to Burno's contention it was improper for the Commonwealth to require him to wear a "stun belt" during trial, the trial court indicated no relief was due since "the restraint was not visible to the jury and there was no evidence that the 'belt psychologically hindered him from fully participating in his trial[.]' " *Burno*, No. CP–39–CR0003637–2003, *slip op.* at 22.

8. The trial court directed the Commonwealth to file a statement of matters complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), and the Commonwealth timely and adequately complied. The trial court did not direct Burno to file a Rule 1925(b) statement.

appeal (and 1, 249 days after arrest) where all of this delay was attributable to [the] Commonwealth['s] lack of diligence, and were all prior counsel ineffective for failing to adequately preserve this claim?

2. Did the trial court err in admitting the second part of [Burno's] September 26, 2003 statement to the police as it was obtained by exploitation of the initial illegality in interrogating [Burno] minutes earlier in violation of his right to counsel, where the Commonwealth did not prove (nor could it) that the primary taint had been purged simply because counsel had now appeared, and was trial counsel ineffective for failing to preserve this claim?

3. Did the trial court err in admitting [Burno's] September 26, 2003 statement as it was made in the course of negotiations between the parties and therefore inadmissible under Pa.R.Evid. 410, and were all prior counsel ineffective for failing to assert this independent basis for exclusion?

4. Did not the Commonwealth fail to meet its burden to prove that [Burno] voluntarily, knowingly and intelligently waived his fifth amendment right to remain silent, as [Burno's] pre-trial attorney rendered grossly ineffective assistance in advising [Burno] to provide a fully incriminating statement without having secured any benefit in exchange for [Burno's] cooperation, and was trial counsel ineffective for failing to adequately raise these grounds for suppression?

5. Did the trial court err as a matter of law in refusing to suppress [Burno's] statements on the basis that [Burno's] arrest was unlawful as it was not supported by probable cause, the supporting affidavit to the arrest warrant was facially defective, and police withheld critical information from the magistrate who authorized the warrant, and were all prior counsel ineffective for failing to adequately litigate and preserve this claim?

6. Did the trial court err in allowing the Commonwealth to introduce on rebuttal [Burno's] entire statement that the court had previously suppressed as having been obtained in violation of the right to counsel because only statements

obtained in violation of Miranda may later be admitted to impeach a defendant's trial testimony and as to those statements only those portions which are impeaching are admissible, and were all prior counsel ineffective for failing to assert this ground for relief?

7. Should not [Burno's] September 26, 2003 statement to police be suppressed in its entirety because the trial prosecutor applied undue pressure and coercion on [Burno] to confess when she met with [Burno] in the absence of counsel, while he was represented by counsel, and unlawfully induced him to confess, and were all prior counsel ineffective for failing to raise this claim?

8. Did the trial court err when it made [Burno's] statements admissible where the court erroneously found in the absence of any record evidence that both the Commonwealth and [Burno] had reached an oral plea agreement pursuant to which [Burno] never entered a plea, nor was it ever entered upon record in open court, nor did [Burno] ever face a colloquy as required, nor was the plea ever accepted by the court as Pa.R.Crim.P. 590 criteria dictate, and did the trial court further err when it failed to find that the Commonwealth had breached the plea agreement as a result of its prior ruling that testimony by [Burno] against his co-defendant was not one of the terms of the plea agreement, assuming one existed?

9. Is [Burno] entitled to the relief of suppression of his September 26, 2003 statement to police as the result of the cumulative impact of all the constitutional and statutory errors related to that statement set forth in this appeal?

Burno's Brief, Statement of Questions Involved for Cross–Appeal, at 1–3.

## II. *Discussion*

### A. *Sufficiency of the Evidence: First–Degree Murder*

Initially, although the issue has not been presented in either the Commonwealth's appeal or Burno's cross-appeal, we consider, as we must in all capital cases, whether the

evidence is sufficient to support Burno's convictions of first-degree murder. *See Commonwealth v. Sanchez*, 623 Pa. 253, 82 A.3d 943 (2013) (indicating this Court conducts a sufficiency of the evidence review *sua sponte* in capital cases). In reviewing the sufficiency of the evidence, we must determine "whether the evidence introduced at trial and all reasonable inferences derived from that evidence, viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to establish beyond a reasonable doubt all of the elements of first-degree murder." *Id.* at 967 (citation omitted). Evidentiary sufficiency is a question of law, and thus, our standard of review is *de novo* and our scope of review is plenary. *Id.*

First-degree murder is an intentional killing, *i.e.*, a "willful, deliberate and premeditated killing." 18 Pa.C.S. § 2502(a), (d). "To obtain a first-degree murder conviction, the Commonwealth must demonstrate that a human being was unlawfully killed, the defendant perpetrated the killing, and that the defendant acted with malice and a specific intent to kill." *Commonwealth v. Mattison*, 623 Pa. 174, 82 A.3d 386, 392 (2013) (quotation, quotation marks, and citation omitted). It is well-settled that specific intent to kill may be established through circumstantial evidence such as the use of a deadly weapon on a vital part of the victim's body. *Commonwealth v. Rega*, 593 Pa. 659, 933 A.2d 997, 1009 (2007), *cert. denied*, 552 U.S. 1316, 128 S.Ct. 1879, 170 L.Ed.2d 755 (2008).

At trial, and as recounted *supra*, the Commonwealth presented evidence that, immediately after hearing gunshots fired from Juarbe's residence, Ms. Moyer saw two men flee from the area in a vehicle, which matched the description of a vehicle owned by Burno. Forensics determined the blood trail, which led from Juarbe's residence to the spot where the vehicle had been parked, matched that of Bethea, who later implicated Burno. Uncontested forensics evidence revealed that bullets fired from two guns, including the type of gun Burno had previously stolen from his ex-wife, were found at the scene and killed the victims. Dr. Land testified Rosado died from a gunshot wound to his head, and Dr. Funke

testified Juarbe suffered eleven gunshot wounds, including three fatal chest wounds. The Commonwealth presented evidence that Burno turned himself into the police and confessed to participating in the murders. Additionally, the Commonwealth presented evidence of confessions Burno had made to his ex-wife and Alford while using a county prison telephone, as well as the confession he had made to a jailhouse informant. Although Burno testified he gave the gun, which he had stolen from his ex-wife to Bethea, and he remained in his vehicle during the killings, the jury was free to discount Burno's testimony and to credit the ample evidence presented by the Commonwealth establishing Burno's identity as a gunman. *See Sanchez, supra.* Accordingly, we hold that sufficient evidence was presented to permit the jury to properly conclude Burno fatally shot both victims in a vital part of their bodies with malice and with the specific intent to kill. Thus, having concluded the evidence was sufficient to sustain Burno's capital murder conviction, we proceed to discuss the issues presented in the Commonwealth's appeal and Burno's cross-appeal.

### B. *Burno's Issues*

At the outset, we recognize the procedural posture of this direct appeal is such that we must initially address the trial court's entertaining of Burno's ineffective assistance of counsel claims on post-sentence motions. In its September 30, 2009 opinion, the trial court, noting that Burno had presented numerous claims of ineffective assistance of trial counsel in his post-sentence motions, recognized that such claims "are normally withheld until collateral review proceedings." *Burno,* No. CP–39–CR0003637–2003, *slip op.* at 10 (citing *Commonwealth v. Grant,* 572 Pa. 48, 813 A.2d 726 (2002)). However, further recognizing the ineffectiveness issues were "fully briefed, argued, and addressed by successor defense counsel in post-sentence proceedings," the trial court concluded Burno's ineffective assistance of trial counsel claims were "cognizable within the chain of the direct challenge to the verdict" pursuant to the dictates of *Commonwealth v. Bomar,* 573 Pa. 426, 826 A.2d 831 (2003), *cert. denied,* 540 U.S. 1115, 124 S.Ct.

54

1053, 157 L.Ed.2d 906 (2004). *Burno*, No. CP–39–CR0003637–2003, *slip op.* at 10. As indicated *supra*, the trial court then proceeded to examine in detail in its opinion only two, of many, of Burno's ineffective assistance of trial counsel claims, *i.e.*, that trial counsel was ineffective in failing to object to two portions of the prosecutor's closing argument, and awarded him a new trial based thereon. In so doing, the trial court did not have the benefit of this Court's recent pronouncement in *Commonwealth v. Holmes*, 621 Pa. 595, 79 A.3d 562 (2013).

Relevant to this appeal, in *Holmes*, this Court specifically reaffirmed *Grant*'s general rule of deferral to PCRA review claims of ineffective assistance of counsel. *Holmes, supra*. In so doing, we specifically disapproved of expansions of the exception to *Grant*'s general rule recognized in *Bomar*, and we limited *Bomar*, which was a case litigated in the trial court before *Grant* was decided and at a time when new counsel entering a case upon post-verdict motions was required to raise ineffective claims at the first opportunity, to its pre-*Grant* facts. *Holmes, supra*. However, we further specifically recognized two exceptions, both of which fall within the discretion of the trial judge. In this regard, we held the following:

First, we appreciate that there may be extraordinary circumstances where a discrete claim (or claims) of trial counsel ineffectiveness is apparent from the record and meritorious to the extent that immediate consideration best serves the interests of justice; and we hold that trial courts retain their discretion to entertain such claims.

Second, with respect to other cases and claims, including cases such as *Bomar* ..., where the defendant seeks to litigate multiple or prolix claims of counsel ineffectiveness, including non-record-based claims, on post-verdict motions and direct appeal, we repose discretion in the trial courts to entertain such claims, but only if (1) there is good cause shown,[1] and (2) the unitary review so indulged is preceded by the defendant's knowing and express waiver of his entitlement to seek PCRA review from his conviction and

sentence, including an express recognition that the waiver subjects further collateral review to the time and serial petition restrictions of the PCRA.[2] In other words, we adopt a paradigm whereby unitary review may be available in such cases only to the extent that it advances (and exhausts) PCRA review in time; unlike the so-called *Bomar* exception, unitary review would not be made available as an accelerated, extra round of collateral attack as of right. This exception follows from the suggestions of prior Court majorities respecting review of prolix claims, if accompanied by a waiver of PCRA review. *See Commonwealth v. Wright* [599 Pa. 270], 961 A.2d 119, 148 n. 22 (Pa.2008); *Commonwealth v. Liston* [602 Pa. 10], 977 A.2d 1089, 1095–1101 (Pa.2009) (Castille, C.J., concurring, joined by Saylor and Eakin, JJ.).

---

[1] [I]n short sentence cases the trial court's assessment of good cause should pay particular attention to the length of the sentence imposed and the effect of the length of the sentence will have on the defendant's realistic prospect to be able to avail himself of collateral review under the PCRA.

[2] Unitary review describes the defendant's ability to pursue both preserved direct review claims and collateral claims of trial counsel ineffectiveness on post-sentence motions and direct appeal, and could aptly describe both exceptions we recognize today. However, for purposes of [Holmes], we intend the term only to describe the second exception, *i.e.*, that hybrid review which would encompass full-blown litigation of collateral claims (including non-record-based claims).

*Holmes*, 621 Pa. at 598–99, 79 A.3d at 563–64 (internal citations omitted) (footnotes in original).

As we specifically indicated in *Holmes*, it is within the purview of the trial court's discretion to determine whether review at the post-verdict stage of the ineffectiveness claims is appropriate. *See Holmes, supra.* However, the trial court in this case proceeded solely under *Bomar.* That is, while the trial court addressed the merits of two of Burno's ineffectiveness claims, it did not do so on the basis of what *Holmes* now recognizes as valid exceptions to the rule of deferral to PCRA review as expressed in *Grant. Holmes*'s express disapproval of extensions of *Bomar,* and its limiting of *Bomar* to that

case's pre-*Grant* facts, requires Burno's ineffective assistance of counsel claims be deferred to PCRA review.

Notably, even if *Holmes* had not expressly limited *Bomar*, we conclude deferral is further appropriate in this case where, unlike in *Bomar*, the trial court did not pass upon Burno's numerous preserved direct appeal claims, but instead addressed only two, of many, of his collateral claims, granting relief on grounds that trial counsel was ineffective, leading both parties to appeal. Unlike *Bomar*, in this case, the sheer number of claims, both direct and collateral, raised by Burno in his post-sentence motions resulted in the trial court not passing upon all of his claims, concluding in an inefficient attempt to dispose of Burno's post-sentence motions. Thus, we conclude deferral of Burno's ineffective assistance of counsel claims to the PCRA is the appropriate remedy. This will prevent the type of "extra round of collateral attack for certain defendants, unauthorized by the General Assembly," which *Holmes* expressly rejected, and produce a more appropriate judicial treatment of Burno's ineffective assistance of trial counsel claims. *Holmes*, 621 Pa. at 619, 79 A.3d at 576.

As suggested *supra*, we conclude Burno's ineffective assistance of counsel claims should be deferred to PCRA review, and, to the extent he presents such claims in his cross-appeal, we conclude the appropriate disposition of those collateral claims is dismissal without prejudice to Burno's right to pursue them under the PCRA.[9] However, we further conclude

9. Significantly, for purposes of fashioning the appropriate mandate in this case, we note each of the issues presented in Burno's cross-appeal, with the exception of numbers eight and nine, which Burno faults the trial court for failing to address, explicitly sound in the ineffective assistance of counsel. While issue number eight alleges trial court error, our preliminary review reveals that this issue appears to be derivative of issue number three, was thus waived by trial counsel's failure to argue it below, and accordingly, would likewise be cognizable solely as a claim of trial counsel ineffectiveness. Issue number nine presents a cumulative error argument, which has no application at this time in light of the unreviewable nature of the individual claims upon which it is premised. In any event, to the extent issues eight and nine are allegations of preserved trial court error, which were presented in Burno's post-sentence motion, the trial court may fully consider the issues upon remand.

that deferral without commentary upon the ineffectiveness claims giving rise to the Commonwealth's appeal would be fruitless and may cause confusion, and thus, we shall address the claims for the sake of clarity.

## C. *The Commonwealth's Issues*

 As relevant here, counsel is presumed effective, and the burden of proving ineffectiveness rests on Burno. *See Commonwealth v. Cooper*, 596 Pa. 119, 941 A.2d 655 (2007). "[T]he test for counsel ineffectiveness is[, in substance,] the same under both the Pennsylvania and federal Constitutions: it is the performance and prejudice test set forth in *Strickland[, supra]*." *Commonwealth v. Spotz*, 582 Pa. 207, 220, 870 A.2d 822, 829 (2005), *cert. denied*, 546 U.S. 984, 126 S.Ct. 564, 163 L.Ed.2d 474 (2005) (quotation, quotation marks, and citations omitted). In Pennsylvania, we have divided the performance element into two sub-parts dealing with arguable merit and reasonable strategy. *See Pierce, supra.* Thus, to prove his trial counsel was ineffective, Burno must demonstrate that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered prejudice as a result. *See Spotz, supra.* Prejudice in this context requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Commonwealth v. King*, 618 Pa. 405, 57 A.3d 607, 613 (2012) (quotation, quotation marks, and citation omitted). *See Hinton v. Alabama*, —— U.S. ——, 134 S.Ct. 1081, 188 L.Ed.2d 1 (2014) (providing an example of the application of the reasonable-probability standard governing prejudice determinations). "A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceedings." *Commonwealth v. Collins*, 598 Pa. 397, 957 A.2d 237, 244 (2008) (citing *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052). *See Hinton, supra.* "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Hinton*, —— U.S. at ——, 134 S.Ct. at 1089 (quotation and quotation marks

omitted). "A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim." *Spotz,* 582 Pa. at 220, 870 A.2d at 830 (citations omitted).

In reviewing the claims of deficient stewardship, upon which the trial court granted Burno a new trial, we note the issues present mixed questions of law and fact. *See Strickland,* 466 U.S. at 698, 104 S.Ct. at 2070 ("Both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact."). This Court has adopted a *de novo* standard of review in determining whether counsel's performance fell beneath the constitutional floor, and we have stressed that we will accept the lower court's factual findings and credibility determinations, which are supported by the record. *See Commonwealth v. Sattazahn,* 597 Pa. 648, 952 A.2d 640 (2008), *cert. denied,* 556 U.S. 1283, 129 S.Ct. 2765, 174 L.Ed.2d 273 (2009). With this legal framework in mind, we now examine the issues presented by the Commonwealth for our review.

Although presented as two separate issues, the Commonwealth's issues are interrelated in that the issues focus on elements of Burno's claim trial counsel was ineffective in failing to object to portions of the prosecutor's closing argument as set forth *supra.* Specifically, in its first issue, the Commonwealth questions whether the trial court erred in finding trial counsel to be ineffective since the underlying issue lacks "arguable merit." In its second issue, the Commonwealth questions the propriety of the trial court's analysis as it relates to the "prejudice" prong.

With regard to the "arguable merit" prong, the Commonwealth acknowledges the trial court granted Burno relief based on two aspects of the prosecutor's closing argument. Specifically, the trial court found "arguable merit" to Burno's claims trial counsel was ineffective in failing to object to the prosecutor's (1) references to Burno's other crimes, bad acts, and wrongs to refute Burno was a "good family man," and (2) argument, as a matter of fact, that Burno cowardly shot Juarbe while he was down on the ground. Regarding the first aspect, the Commonwealth argues the trial court impermissi-

bly viewed the prosecutor's statements in isolation and, when viewed in proper context, the prosecutor's statements were not improper. The crux of the Commonwealth's position is that all of the statements at issue constituted permissible oratorical flair and the prosecutor "was fairly commenting" on evidence of other crimes, which Burno candidly acknowledged occurred in his trial testimony. The Commonwealth submits the trial court assessed these comments out of context, in that the prosecutor was properly referencing admissible evidence, and legitimate inferences arising therefrom, which disputed the reasonableness of the version of events Burno presented to the jury.

As it relates to the second aspect, the Commonwealth argues the trial court erred in finding the prosecutor improperly vouched for the credibility of evidence and the comment went beyond oratorical flair. To the contrary, the Commonwealth argues that, when the prosecutor's comment is viewed in proper context, it is clear the prosecutor's "statement was merely a passing comment within a large argument." Commonwealth's Brief at 21. Further, the Commonwealth argues the trial court ignored the fact the prosecutor's comment was a direct response to the defense's closing argument, as well as based on the evidence and legitimate inferences derived therefrom.

In response, regarding the first aspect, Burno contends the trial court properly concluded the prosecutor's summation improperly highlighted Burno's "various misdeeds" in order to impugn his character. That is, Burno argues the prosecutor's statements regarding Burno's prior crimes and misdeeds encouraged the jury to convict Burno on the theory that "he was a bad person, with a criminal record, who mistreated the mother of his daughter and liked to do drugs and drink alcohol." Burno's Brief at 21. Burno argues the prosecutor impermissibly "sought to persuade the jury to dislike [Burno] as a 'bad family man,' because of certain prior bad acts or other crimes-the very propensity argument the law forbids under any circumstance." Burno's Brief at 21 (citations omitted). Further, Burno submits the defense neither "opened the

door" to the prosecutor's cascade of personal attacks nor portrayed Burno as a "good family man," and thus, the prosecutor's statements were not a "fair response" to the defense's argument.

As it relates to the second aspect, Burno contends the prosecutor's statement she knew as fact that Burno shot Juarbe while he was lying on the ground was a "grossly improper statement expressing her personal belief in the guilt of [Burno] and the credibility of her evidence." Burno's Brief at 19. He also suggests the prosecutor's statement was not supported by the evidence.

 The legal principles relevant to a claim of prosecutorial misconduct, and the derivative ineffective assistance claim grounded in counsel's failure to object to a prosecutor's comments during summation, are well-established. To succeed on such a claim, Burno was required to demonstrate that the prosecutor's comments violated a constitutionally or statutorily protected right, such as the Fifth Amendment privilege against compulsory self-incrimination or the Sixth Amendment right to a fair trial, or a constitutional interest such as due process. *See Commonwealth v. Elliott*, 622 Pa. 236, 80 A.3d 415 (2013). "To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial. The touchstone is the fairness of the trial, not the culpability of the prosecutor." *Commonwealth v. Spotz*, 616 Pa. 164, 47 A.3d 63, 97 (2012) (citations omitted).

 "A prosecutor may make fair comment on the admitted evidence and may provide fair rebuttal to defense arguments. Even an otherwise improper comment may be appropriate if it is in fair response to defense counsel's remarks. Any challenge to a prosecutor's comment must be evaluated in the context in which the comment was made." *Elliott*, 622 Pa. at 282, 80 A.3d at 443 (quotation omitted).

Not every unwise, intemperate, or improper remark made by a prosecutor mandates the grant of a new trial[.] Reversible error occurs only when the unavoidable effect of the

challenged comments would prejudice the jurors and form in their minds a fixed bias and hostility toward the defendant such that the jurors could not weigh the evidence and render a true verdict.

*Spotz,* 616 Pa. at 222, 47 A.3d at 98 (citations omitted).

While it is improper for a prosecutor to offer any personal opinion as to the guilt of the defendant or the credibility of the witnesses, it is entirely proper for the prosecutor to summarize the evidence presented, to offer reasonable deductions and inferences from the evidence, and to argue that the evidence establishes the defendant's guilt.... [The] prosecutor must be free to present his or her arguments with logical force and vigor, and comments representing mere oratorical flair are not objectionable.

*Thomas,* 618 Pa. at 79–80, 54 A.3d at 338 (citations, quotation, and quotation marks omitted).

Applying these legal standards to the first aspect of the prosecutor's closing argument, in which the prosecutor referenced several of Burno's other crimes, bad acts, and wrongs to refute Burno was a "good family man," we agree with the Commonwealth that the trial court erred in finding Burno's underlying claim met the *Strickland/Pierce* "arguable merit" prong. When properly viewed in context, we conclude the prosecutor did not argue that Burno should be convicted of the instant crimes because he was not a "good family man" or that the jury should infer that he probably committed the crimes at issue because of his prior misdeeds. Rather, the prosecutor argued that Burno's version of events, wherein he depicted himself as an innocent bystander who was just trying to assist a friend in trouble, was not worthy of belief in light of the conflicting statements Burno made to the police and others in which Burno implicated himself as the killer of both victims.

It was proper for the prosecutor to respond vigorously to the defense's argument and theories by emphasizing the implausibility of Burno's trial testimony. *See Thomas, supra.* This is particularly true given the fact evidence of the other

crimes, bad acts, and wrongs to which the prosecutor referred in the challenged portion of her summation was introduced at trial.[10] *See id.* As indicated *supra,* the prosecutor was permitted to summarize this evidence, offer reasonable deductions and inferences from the evidence, and utilize "oratorical flair," such as the phrase "good family man," in making her closing argument to the jury. By doing so, the prosecutor did not "prejudice the jurors and form in their minds a fixed bias and hostility toward [Burno] such that the jury could not weigh the evidence and render a true verdict." *Spotz,* 616 Pa. at 222, 47 A.3d at 98. Thus, as we find there to be no objectionable prosecutorial misconduct in this regard, we conclude the trial court erred in finding Burno's underlying claim met the *Strickland/Pierce* "arguable merit" prong, and thus, trial counsel cannot be deemed ineffective on this basis.

We now turn to the second aspect of the prosecutor's closing argument, in which the prosecutor stated, "The coward shot him while he was down on the ground. I know that. Fact." N.T., Trial, 3/5/07, at 770. Applying the legal standards as set forth *supra,* we agree with the Commonwealth that the trial court erred in finding Burno's underlying claim satisfied the *Strickland/Pierce* "arguable merit" prong. When viewed in context, we conclude the prosecutor's statement, suggesting Burno shot Juarbe while he was lying on the ground, was a permissible appeal to the jury to make a logical inference from the evidence adduced at trial in support of the Commonwealth's theory, which was naturally opposed to the defense's theory. The statement was a fair comment based on the evidence presented at trial, including testimony from Officer Derr, the first responder who indicated he found one of the victims lying on his back in the bedroom doorway, as well as forensic testimony from Dr. Funke, who performed the autopsy on Juarbe. The fact the prosecutor's statement contradicted Burno's version of events does not amount to an improper bolstering of the Commonwealth's evidence or an improper

10. The trial court recognized as much in its opinion when it found all of the "other bad acts" cited by Burno were properly admitted into evidence. *Burno,* No. CP-39-CR0003637-2003, *slip op.* at 11.

expression of the prosecutor's personal belief as to Burno's guilt. The prosecutor here did not imply that she had special knowledge or an innate ability to determine guilt based upon her position as a prosecutor. Rather, with permissible "oratorical flair," the prosecutor implored the jury to render a verdict favorable to the Commonwealth. *See Commonwealth v. Abu-Jamal,* 553 Pa. 485, 720 A.2d 79 (1998), *cert. denied,* 528 U.S. 810, 120 S.Ct. 41, 145 L.Ed.2d 38 (1999) (holding no new trial was warranted based on allegations of prosecutorial misconduct in closing arguments, where prosecutor's statements involved fair response to defense evidence; prosecutor did not personally vouch for credibility of witness but rather properly argued witness' testimony supported guilty verdict). We emphasize that the "prosecutor has reasonable latitude during h[er] closing argument to advocate h[er] case, respond to arguments of opposing counsel, and fairly present the Commonwealth's version of the evidence to the jury." *Commonwealth v. Hanible,* 612 Pa. 183, 30 A.3d 426, 465 (2011), *cert. denied,* —— U.S. ——, 133 S.Ct. 835, 184 L.Ed.2d 662 (2013) (quotation and quotation marks omitted). Thus, as we deem there to be no objectionable prosecutorial misconduct in this regard, we conclude the trial court erred in finding Burno's underlying claim met the *Strickland/Pierce* "arguable merit" prong, and therefore, trial counsel cannot be deemed ineffective on this basis.

As indicated *supra,* in its second issue, the Commonwealth challenges the propriety of the trial court's conclusion that Burno met his burden of proving the *Strickland/Pierce* prejudice prong as it relates to trial counsel's failure to object to the prosecutor's closing argument. Specifically, the crux of the Commonwealth's argument is the trial court's prejudice analysis was "perfunctory," resulting in the trial court failing to recognize its repeated instructions on the limited role of counsel's argument to the jury mitigated any chance of prejudice and the overwhelming evidence of guilt reveals the outcome of Burno's trial would not have been more favorable to him had his counsel objected to the challenged portions of the prosecutor's summation.

64

Burno, in contrast, submits the trial court properly conclud-
ed the prosecutor's remarks so tainted the jury with prejudice
and bias toward him that their ability to weigh the evidence
objectively was impeded. He submits "the trial court careful-
ly examined the remarks in the context of the overall evidence
presented at trial and the competing trial theories of [the]
prosecution and [him]." Burno's Brief at 25. Having presid-
ed over the trial, Burno contends the trial court was "keenly
aware" of the prosecutor's statements prejudicial effect, and
thus, the trial court properly found "no harmless error." *See*
Burno's Brief at 25, 27.

 Since Burno failed to meet his burden of proving
the *Strickland/Pierce* "arguable merit" prong with regard to
his underlying claims of error, his ineffectiveness claim fails on
this basis alone. *Commonwealth v. Hutchinson*, 611 Pa. 280,
25 A.3d 277 (2011), *cert. denied*, —— U.S. ——, 132 S.Ct. 2711,
183 L.Ed.2d 70 (2012) (where the appellant's assertions of
prosecutorial misconduct during summation had no merit, trial
counsel could not be deemed ineffective); *Commonwealth v.
Wright*, 599 Pa. 270, 961 A.2d 119, 149 (2008) ("Failure to meet
any prong of the test will defeat an ineffectiveness claim.")
(citation omitted). However, we would be remiss if we did not
comment on the fact the trial court did not utilize entirely the
correct standard in concluding Burno was prejudiced by trial
counsel's failure to object to the prosecutor's summation,
particularly since it is likely Burno will raise ineffectiveness
claims under the auspices of the PCRA. Here, the trial court
applied, to some extent, the "harmless error" standard in
determining whether Burno was prejudiced; however, as this
Court has suggested, "the test for prejudice in the ineffective-
ness context is more exacting than the test for harmless error,
and the burden of proof is on the defendant, not the Common-
wealth." *Commonwealth v. Spotz*, 582 Pa. at 227, 870 A.2d at
834 (citations omitted). As a general and practical matter, it
is more difficult for a defendant to prevail on a claim litigated
through the lens of counsel ineffectiveness, rather than as a
preserved claim of trial court error. As indicated *supra*, in
order to demonstrate a defendant was prejudiced by counsel's

deficient performance, the defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Hinton,* —— U.S. at ——, 134 S.Ct. at 1089 (quotation and quotation marks omitted). In light of the distinct review standards applicable to a preserved claim of trial court error versus a claim sounding in ineffective assistance of counsel, we conclude the trial court erred in utilizing the "harmless error" standard, rather than the *Strickland/Pierce* "prejudice" standard, in analyzing Burno's ineffectiveness claims.

 Viewing the prejudice question under the appropriate standard, we agree with the Commonwealth that, assuming, *arguendo,* Burno's underlying claims did not lack "arguable merit," he would not otherwise be entitled to relief since Burno did not meet his burden of proving prejudice, *i.e.,* that there is a reasonable probability that, but for counsel's failure to object to the challenged portions of the prosecutor's closing argument, the factfinder would have had a reasonable doubt respecting guilt. *See Hinton, supra; Commonwealth v. Montalvo,* 604 Pa. 386, 986 A.2d 84 (2009), *cert. denied,* —— U.S. ——, 131 S.Ct. 127, 178 L.Ed.2d 77 (2010) (assuming, *arguendo,* prosecutor's comments during penalty phase were improper, the appellant's ineffectiveness claim fails since he failed to demonstrate prejudice pursuant to *Strickland/Pierce* ). In this regard, we note the trial court fully instructed the jury it was not to consider the attorneys' arguments as evidence or consider any opinion, which the attorneys may express concerning Burno's guilt or innocence. N.T., Trial, 2/26/07, at 20–21, 29; N.T., Trial, 3/5/07, at 723, 783, 809. The jury is presumed to have followed the trial court's instructions. *See Elliott, supra* (recognizing juries are presumed to follow trial court's instructions).

Moreover, the evidence of Burno's guilt was overwhelming. *See Commonwealth v. Busanet,* 618 Pa. 1, 54 A.3d 35 (2012), *cert. denied,* —— U.S. ——, 134 S.Ct. 178, 187 L.Ed.2d 122 (2013) (discussing overwhelming evidence of guilt as it relates to finding of prejudice under the *Strickland/Pierce* standard). For instance, as more fully detailed *supra,* the Commonwealth

presented evidence of an eyewitness, Ms. Moyer, who heard gunshots and immediately saw two men flee the area in a vehicle, which matched the description of a vehicle owned by Burno. Forensics determined the blood trail, which led from the residence where the murders occurred to the area where Ms. Moyer saw the subject vehicle parked, matched that of Bethea, who later implicated Burno. The Commonwealth presented evidence that Burno subsequently turned himself into the police and confessed to participating in the murders. The Commonwealth further presented evidence of Burno's confessions, which he made to his ex-wife and Alford while using a county prison telephone, as well as the confession, which Burno made to a jailhouse informant. Moreover, forensics linked bullets from the crime scene to a gun, which was compatible with the gun Burno stole from his ex-wife. Thus, we conclude Burno's claim of ineffectiveness additionally fails since he failed to demonstrate prejudice under *Strickland/Pierce*.[11] *See Commonwealth v. Cox*, 603 Pa. 223, 983 A.2d 666 (2009) (where the Commonwealth's evidence, including eyewitness testimony and the appellant's confessions to police, overwhelmingly established guilt, the appellant failed to show he was prejudiced by counsel's failure to request cautionary instructions for statements made by the prosecutor in his opening and closing statements indicating the appellant was involved in a drug trafficking organization). We caution the lower court that, in the likely event Burno presents the court with ineffective assistance of counsel claims under the auspices of the PCRA, the court should look to this Court's opinion for guidance, particularly as it relates to an assessment of the *Strickland/Pierce* prejudice prong.

## III. *Conclusion*

We reverse the trial court's September 30, 2009 order granting Burno's motion for a new trial, remand for the

---

11. Regarding trial counsel's failure to object to the prosecutor's summation, the Commonwealth and Burno have interwoven into their appellate arguments averments more specifically related to the *Strickland/Pierce* "reasonable basis" prong. However, in light of our foregoing analysis, it is unnecessary for us to address specifically the "reasonable basis" prong.

resolution of any pending preserved claims related to trial court error raised in Burno's post-sentence motion,[12] and dismiss Burno's claims of ineffective assistance of counsel without prejudice to his right to pursue those collateral claims under the PCRA. Jurisdiction relinquished.

Chief Justice CASTILLE and Justices EAKIN and McCAFFERY join the opinion.

Justice SAYLOR files a concurring opinion.

Justice BAER files a concurring opinion in which Justice TODD joins.

Justice SAYLOR, concurring.

I join the majority opinion except for its approval, as permissible "oratorical flair," of the prosecutorial name-calling and expressions of personal opinion. Majority Opinion, at 62, 94 A.3d at 975 (quoting N.T., March 5, 2007, at 770 (reflecting the district attorney's statement, "The coward shot him while he was down on the ground. I know that. Fact.")).

I appreciate the degree of preparation, commitment, and involvement required of Commonwealth attorneys in these high-stakes cases. On balance, however, I believe that justice would be better served if the Court were to enforce a higher standard of professionalism and caution prosecutors to re-strain themselves in instances in which boundaries are tested and/or crossed. In other words, I would require Common-wealth attorneys to confine themselves more closely to the evidence and the applicable law both in the presentation of evidence and in arguments to jurors. *Accord Commonwealth v. Cox*, 581 Pa. 107, 148, 863 A.2d 536, 560 (2004) (Saylor, J., concurring and dissenting).

---

**12.** As indicated *supra*, having awarded Burno a new trial based on his claim trial counsel was ineffective in failing to object to the challenged portions of the prosecutor's summation, the trial court specifically indicated it need not reach Burno's remaining claims, which included allegations of trial court error. Thus, since we have reversed the trial court's grant of a new trial, we remand for the trial court to dispose of the remaining preserved claims of alleged trial court error, which Burno presented in his post-sentence motions.

68

Justice BAER, concurring.

I join the majority opinion, but write separately to disassociate myself from the majority's discussion of the merits of the ineffective assistance of counsel claims included in Junius Burno's direct appeal, upon which the trial court relied in granting him a new trial. I agree with the majority that the trial court addressed the ineffectiveness claims on direct appeal pursuant to the *Bomar*[1] exception to *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002), a process this Court rejected in our recent decision in *Commonwealth v. Holmes*, 621 Pa. 595, 79 A.3d 562 (2013). I further agree with the majority that "*Holmes*'s express disapproval of extensions of *Bomar*, and its limiting of *Bomar* to that case's pre-*Grant* facts, requires Burno's ineffective assistance of counsel claims to be deferred to PCRA review." Op. at 56, 94 A.3d at 971 (footnote omitted).

The majority's analysis, however, does not end upon concluding that the trial court erred by addressing and ultimately granting relief on the ineffectiveness claims while the case was on direct appeal. Rather, it finds that "deferral without commentary upon the ineffectiveness claims giving rise to the Commonwealth's appeal would be fruitless and may cause confusion." Op. at 55–56, 94 A.3d at 972. Thus, it proceeds to "address the claims for the sake of clarity." *Id.* Following a lengthy discussion of why the trial court's rulings on the merits of the ineffectiveness claims were erroneous, the majority cautions the lower court that "in the likely event Burno presents the court with ineffective assistance of counsel claims under the auspices of the PCRA, the court should look to this Court's opinion for guidance, particularly as it relates to an assessment of the *Strickland/Pierce* prejudice prong." *Id.* at 66, 94 A.3d at 977–78.

I find this *obiter dictum* in addressing the Commonwealth's appeal to be unnecessary and problematic, particularly when this Court has not afforded similar "guidance" in post-*Holmes* direct appeals filed by defendants. In addressing the trial

1. *Commonwealth v. Bomar*, 573 Pa. 426, 826 A.2d 831 (2003).

court's denial of relief on ineffectiveness claims in the direct appeal in *Commonwealth v. Stollar*, 624 Pa. 107, 84 A.3d 635 (2014), this Court, without entertaining the merits of the ineffectiveness claims stated, "we dismiss Appellant's two ineffective assistance of counsel claims raised herein, without prejudice should Appellant decide to include and potentially further develop these two claims in a timely filed petition pursued under the PCRA." *Id.* at 652. *See also Commonwealth v. Arrington*, 624 Pa. 506, 86 A.3d 831, 856 (Pa.2014) (declining to address ineffectiveness claims rejected by the trial court on direct appeal and dismissing them without prejudice to the appellant's right to pursue them on collateral review).

While it can be argued that judicial economy will be served by providing guidance to the lower court on how to adjudicate claims that Burno will likely raise in a future collateral proceeding, I believe the better approach is the one taken in *Stollar* and *Arrington*—to exercise judicial restraint and refrain from entertaining deferred claims that will subsequently be presented on collateral review. Moreover, as noted, I perceive no justification for deciding the merits of ineffectiveness claims included in appeals filed by the Commonwealth, as the majority does here, and declining to consider ineffectiveness claims when raised in a defendant's direct appeal, as occurred in *Stollar* and *Arrington*.

Justice TODD joins this concurring opinion.