J-S60011-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JULIO CESAR MARTINEZ-OCASIO | |
| Appellant | No. 61 MDA 2014 |

Appeal from the Judgment of Sentence October 21, 2013
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0002495-2012

BEFORE:  OTT, J., STABILE, J., and JENKINS, J.

MEMORANDUM BY OTT, J.:                    **FILED APRIL 21, 2015**

Julio Cesar Martinez-Ocasio appeals from the judgment of sentence imposed on October 21, 2013, in the Court of Common Pleas of York County. Martinez-Ocasio was tried by a jury and convicted on charges of aggravated assault by vehicle and recklessly endangering another person (REAP).[1] Martinez-Ocasio received a sentence of nine to 23 months' incarceration followed by 24 months of probation.[2]  In this timely appeal, Martinez-Ocasio

_____

[1] 75 Pa.C.S. § 3732.1 and 18 Pa.C.S. § 2705, respectively.  Additionally, the trial court found Martinez-Ocasio guilty of the summary traffic offenses of reckless driving, careless driving, and failure to drive at a safe speed.  75 Pa.C.S. §§ 3736, 3714, and 3361, respectively.  He was charged with, but acquitted of, illegal racing. 75 Pa.C.S. § 3367.

[2] There were two trials.  The first, held in January 2013, resulted in Martinez-Ocasio's conviction on the above stated charges.  However, the jury could not reach a verdict on the additional charge of aggravated

*(Footnote Continued Next Page)*

claims his convictions of aggravated assault by vehicle and REAP were against both the weight and sufficiency of the evidence. After a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm.

With one clarification, we adopt the factual and procedural history as recited by the trial court in its Pa.R.A.P. 1925(a) opinion:

> On August 10, 2011 at approximately 6:30 p.m., Dana Briggs (the "Victim") suffered serious bodily injury as a result of an automobile collision occurring along Route 30 in East York, Pennsylvania. The Victim was traveling eastbound in Route 30 *en route* to her residence when a BMW collided with a Mercedes in the westbound lane, thereby causing the Mercedes to cross the center median and strike the Victim's Chevrolet. [Martinez-Ocasio] was the operator of said BMW. The Victim lost consciousness as a result of the collision, and she remained in a coma for approximately one month thereafter. The Victim spent the following two months in a hospital and rehabilitation facility, and symptoms of her injuries persisted through the date of trial.
>
> The speed limit governing the stretch of roadway in question is forty (40) miles per hour. The evidence presented at trial shows a number of speed limit and other warning signs were prominently posted and would have been visible to [Martinez-Ocasio] as he traveled westbound on Route 30. The evidence

---
*(Footnote Continued)*

assault. 18 Pa.C.S. § 2702. He was retried in September 2013, and was acquitted of aggravated assault. For reasons that are unclear from the official record, the prior charges of which he was convicted, were again submitted to the jury, which acquitted him on aggravated assault by vehicle but convicted him of reckless endangerment. Counsel for Martinez-Ocasio clarifies in the appellate brief that, "This appeal addresses only the first trial and the verdict thereof." Appellant's Brief at 12, n. 2.

also indicates the collision occurred on a roadway that is highly congested most evenings. More specifically, the collision ensued as [Martinez-Ocasio's] vehicle approached the congested intersection of Route 30 and North Hills Road, adjacent to North Hills Elementary School and various retail stores.

At trial, Timothy K[ie]hl testified he witnessed the collision while traveling westbound on Route 30. Mr. K[ie]hl observed the BMW pass him in a "flash", traveling at a speed he estimated to be one hundred (100) miles per hour. Similarly, Constance Arnold, another eyewitness to the collision, testified that she heard "a loud sound, like a whiz, fly by" her just prior to the collision. The expert reconstructionist who testified at trial was unable to form any conclusions with regard to the speed at which [Martinez-Ocasio's] vehicle was traveling.

Mr. K[ie]hl's opinion was that the drivers of the BMW and Mercedes were racing each other. Anthony Miller, the driver of the Mercedes, admitted to police that it probably appeared as though the cars were racing. A written statement signed by [Martinez-Ocasio] describes the Mercedes as "the car that was racing previously against me." The testimony clearly indicates the vehicles weaved in and out of traffic just prior to impact. Kathy Ermolovich provided eyewitness testimony that the impact was a result of [Martinez-Ocasio's] attempt to "wedge'" his BMW between two vehicles traveling in close proximity to one another in the left lane. [Martinez-Ocasio's] vehicle collided with the Mercedes as a result, and the Mercedes then crossed the median and struck the Victim's vehicle. An on-scene inspection of the vehicles failed to uncover any obvious mechanical defects in any of the vehicles other than those caused by the collision itself.

Trial Court Opinion, 4/30/2014, at 2-3 (record citations omitted). [3]

_____

[3] In his brief, Martinez-Ocasio correctly notes Ermolovich actually testified it was the convertible, that is, Miller's Mercedes Benz, which tried to wedge itself between two other vehicles. *See* Martinez-Ocasio's Brief at 10. This testimony will be discussed when we address the weight of the evidence claim.

In consideration of the above, Martinez-Ocasio argues his conviction of aggravated assault by vehicle is against the weight[4] and sufficiency of the evidence.  Our standard of review for such claims is well-settled and oft-repeated.

> In reviewing the sufficiency of the evidence, we must determine "whether the evidence introduced at trial and all reasonable inferences derived from that evidence, viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to establish beyond a reasonable doubt all of the elements of first-degree murder." Evidentiary sufficiency is a question of law, and thus, our standard of review is *de novo* and our scope of review is plenary.

***Commonwealth v. Burno***, 94 A.3d 956, 969 (Pa. 2014) (citation omitted).

> The weight given to trial evidence is a choice for the factfinder. If the factfinder returns a guilty verdict, and if a criminal defendant then files a motion for a new trial on the basis that the verdict was against the weight of the evidence, a trial court is not to grant relief unless the verdict is so contrary to the evidence as to shock one's sense of justice.
>
> When a trial court denies a weight-of-the-evidence motion, and when an appellant then appeals that ruling to this Court, our review is limited. It is important to understand we do not reach the underlying question of whether the verdict was, in fact, against the weight of the evidence. We do not decide how we would have ruled on the motion and then simply replace our own judgment for that of the trial court. Instead, this Court determines whether the trial court abused its discretion in reaching whatever decision it made on the motion, whether or not that decision is the one we might have made in the first instance.

---

[4] This claim was preserved by post-sentence motion.

> Moreover, when evaluating a trial court's ruling, we keep in mind that an abuse of discretion is not merely an error in judgment. Rather, it involves bias, partiality, prejudice, ill-will, manifest unreasonableness or a misapplication of the law. By contrast, a proper exercise of discretion conforms to the law and is based on the facts of record.

***Commonwealth v. Ferguson***, 107 A.3d 206, 212-13 (Pa. Super. 2015) (citations omitted).

Also regarding the weight of the evidence, "the finder of fact may believe all, some or none of a witness's testimony." ***Commonwealth v. Sloan***, 67 A.3d 808, 814 (Pa. Super. 2013) (citation omitted). Finally, "[i]t is the responsibility of the factfinder to reconcile conflicts in the evidence." ***Commonwealth v. Fant***, 398 A.2d 704, 708 (Pa. Super. 1979) (citation omitted).

The statutory requirements to be convicted of aggravated assault by vehicle are found at 75 Pa.C.S. §3732.1.

> **(a) Offense.--**Any person who recklessly or with gross negligence causes serious bodily injury to another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic, except section 3802 (relating to driving under influence of alcohol or controlled substance), is guilty of aggravated assault by vehicle, a felony of the third degree when the violation is the cause of the injury.

75 Pa.C.S. §3732.1(a).[5]

---

[5] For purposes of Section 3732.1, a person acts recklessly if he, engages in conduct that violates a law or ordinance governing the operation of motor

*(Footnote Continued Next Page)*

The statutory requirements for REAP are:

A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury.

18 Pa.C.S. § 2705.

For purposes of REAP, a person acts recklessly when he or she acts in "conscious disregard of a known risk of death or great bodily injury to another person." *See Commonwealth v. Klein*, 795 A.2d 424, 427-28 (Pa. Super. 2002)(citation omitted).

Finally, "[a]s with other elements of crime, the trier of fact may infer criminal intent, knowledge and recklessness from circumstantial evidence." *Commonwealth v. Moore*, 395 A.2d 1328, 1332 (Pa. Super. 1978).

---

*(Footnote Continued)* —————————————

vehicles and consciously disregards a substantial and unjustifiable risk that the driving conduct will cause death, the nature and degree of the risk being such that it is grossly unreasonable for him to disregard it. *See* Pa.SSJI (Crim) 17.3732.1(3).

Similarly, a person acts in a grossly negligent manner if he or she is driving in violation of applicable traffic laws and should be aware of a substantial and unjustifiable risk that the driving conduct will cause death, the nature and degree of the risk being that it is grossly unreasonable for him or her to fail to recognize the risk. *See* Pa.SSJI (Crim) 17.3732.1(4). Jurors are further instructed to consider all relevant facts and circumstances, including the nature and intent of the driving conduct and the circumstance known to the driver. *Id*.

The parties stipulated that the victim suffered serious bodily injury as a result of the accident. Accordingly, the question at issue was whether Martinez-Ocasio engaged in reckless or grossly negligent conduct which caused the victim's injuries. Specifically, Martinez-Ocasio argues the Commonwealth failed to prove causation, in that the other driver (Anthony D. Miller) was the sole cause of the accident. We disagree.

The central failure of Martinez-Ocasio's argument is that it relies upon an interpretation of the evidence that is most favorable to him, not to the Commonwealth, as verdict winner. Viewed through the proper standard, there is sufficient evidence to support the verdict on both aggravated assault by vehicle and REAP.

We note,

[c]riminal responsibility is properly assessed against one whose conduct was a direct and substantial factor in producing the death even though other factors combined with that conduct to achieve the result.

Thus, "[a] defendant cannot escape the natural consequences of his act merely because of foreseeable complications." So long as the defendant's conduct started the chain of causation which led to the victim's death, criminal responsibility for the crime of homicide may properly be found.

**Commonwealth v. Shoup**, 620 A.2d 15, 18-19 (Pa. Super. 1993) (citations omitted).

The evidence presented at trial demonstrated that Miller and Martinez-Ocasio were engaged in racing-type behavior, on a heavily traveled road, at

approximately 6:30 p.m. This conduct took place in a 40 M.P.H. speed limit zone that was well posted, with additional signs warning drivers of traffic congestion. All relevant witnesses testified how both cars sped past them. One witness, Timothy Kiehl, testified he was driving in the left hand lane when Martinez-Ocasio's BMW sped past him on the right, travelling at approximately 100 miles per hour. The Mercedes Benz sped by next, and passed the BMW. It appeared to Kiehl that the two cars were racing. Although at trial he could not remember seeing the BMW and Mercedes Benz colliding, he concluded they did based upon the scrape marks he saw on the BMW immediately after the accident. N.T. Trial, 1/7-10/2013, at 109-113. Photographic evidence, Commonwealth Exhibit 53, shows scrape marks on the rear driver's side wheel well and quarter panel of Martinez-Ocasio's BMW, just as Kiehl described. Another witness, Constance Arnold, was alerted to the sound of the cars as they sped past. Sergeant Brian Wilbur of the Springettsbury Township Police Department testified that Martinez-Ocasio described Miller's Mercedes Benz as "the car that was previously racing against me." *See* N.T. Trial, 1/7-10/2013, at 174. The handwritten note and diagram provided to Sergeant Wilbur by Martinez-Ocasio stated he *slowed* to 40+ miles per hour, the posted speed limit, and attempted to

change lanes to avoid hitting the car in front of him. *See* Commonwealth Exhibit 77[6] (emphasis added). Further, the note and diagram both indicate that as a result of the attempted lane change, the Mercedes Benz and Martinez-Ocasio's BMW collided, after which the Mercedes Benz crossed the median and struck the victim's car. *Id*. Miller told the police at the scene, and testified at trial, that he lost control of his car after Martinez-Ocasio tried to change lanes in front of him, and in doing so, struck the front of his car. N.T. Trial, 1/7-10/2013, at 181, 369. Finally, the expert report authored by Corporal Gary W. Mainzer, Pennsylvania State Police, indicated that the Mercedes Benz was travelling between 57 and 73 miles per hour when Miller lost control of it.[7] N.T. Trial, 1/7-10/2013, at 297, Commonwealth Exhibit 73.

Our review of the certified record confirms the presentation of evidence demonstrating Martinez-Ocasio drove in a reckless manner, which

---

[6] The exhibit numbers on the evidence provided in the certified record correspond to the second trial. The statement and diagram were marked as Commonwealth Exhibit 18 at the first trial. *See* N.T. Trial, 1/7-10/2013, at 182-83. We refer to the exhibit numbers as marked in the certified record.

[7] Although Corporal Miller had no physical evidence by which to estimate Martinez-Ocasio's speed, the jury would have been entitled to infer that he was travelling at a similar speed, based upon the other eyewitness testimony presented at trial as well as Martinez-Ocasio's statement given to Sergeant Wilbur.

forced him to change lanes to avoid hitting the car in front of him, which caused him to clip Miller's Mercedes Benz, sending it into oncoming traffic. There was clearly sufficient evidence to support a determination of causation. Martinez-Ocasio is not entitled to relief on this claim.

Martinez-Ocasio's final claim is that the guilty verdicts were against the weight of the evidence. As noted previously, our task is to determine whether the trial court abused its discretion in denying Martinez-Ocasio's post-trial motion, not to reweigh the evidence ourselves. *Ferguson*, *supra*. Our review of the certified record requires us to find no abuse of discretion in this regard.

The evidence, as recounted above, provides ample support for the verdict, and accordingly, we find no fault with the trial court's conclusion the verdict does not shock one's sense of justice. We noted previously that Kathy Ermolovich testified, "It almost seemed like it [the black convertible] wedged itself in between the car that was in front and behind it." N.T. Trial, 1/7-10/2013, at 128. *See* Footnote 3, *supra*. However, the fact-finder is responsible for reconciling any conflict in testimony. All the other evidence produced at trial indicates it was Martinez-Ocasio's BMW that was changing lanes. The photographs of the BMW demonstrate scrapes along the driver's side rear quarter–panel. This evidence permitted the jury to reasonably infer it was the BMW that was attempting to change from the middle lane to the left most lane when it struck the front of Miller's Mercedes Benz.

- 10 -

Further, as already noted, Martinez-Ocasio confirmed both in his statement to the police after the accident and in his hand drawn diagram of the accident it was he who was changing lanes.

The jurors were free to believe all, some or none of the evidence presented. Here, in light of the evidence presented, the verdict does not shock one's sense of justice. Accordingly, the denial of the post-trial motion regarding weight of the evidence must be affirmed. Because all elements of both REAP and aggravated assault by vehicle were proven beyond a reasonable doubt and the verdict was not against the weight of the evidence, Martinez-Ocasio is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/21/2015

- 11 -