J-S20024-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANTOINE BENNETT, | |
| Appellant | No. 1387 WDA 2014 |

Appeal from the Order Entered July 28, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0009820-2008

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN, and WECHT, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED MAY 20, 2015**

Appellant Antoine Bennett appeals from the July 28, 2014 order denying his first petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546.  After careful review, we affirm.

The trial court summarized the facts of the crime as follows:

> The case involved a robbery at knifepoint which occurred in the Friendship area of the city of Pittsburgh on February 8, 2008, at approximately 9:30 p.m.  At trial, the Commonwealth presented evidence through the victim, investigating police officer, and detectives. The case involved the robbery at knifepoint of a pizza delivery driver. The victim testified that after making a delivery he was getting back into his automobile, at which time he was grabbed by the neck and threatened with a serrated knife blade.  The perpetrator demanded all of his money.  The victim was extremely afraid of being seriously hurt during this encounter.  The perpetrator had a hood and ski mask on.  Despite this, the victim was able to see his eyes, cheeks, eyebrows, the bridge of his nose, and the makeup of his face. At a later date, the victim identified the defendant from a photo array assembled by the robbery squad detectives.  The victim

identified the defendant at trial as the person who had robbed him.

Trial Court Opinion, 4/20/11, at 2.

Following a trial on December 14–15, 2009, a jury found Appellant guilty of a single count of robbery on December 15, 2009. On March 15, 2010, the trial court sentenced Appellant to five and one-half to eleven years of incarceration. Appellant filed a timely notice of appeal to this Court, and we affirmed the judgment of sentence on March 23, 2012. ***Commonwealth v. Bennett***, 617 WDA 2010, 47 A.3d 1255 (Pa. Super. filed March 23, 2012) (unpublished memorandum). Our Supreme Court denied Appellant's petition for allowance of appeal on November 8, 2012. ***Commonwealth v. Bennett***, 181 WAL (2012), 56 A.3d 396 (Pa. filed November 8, 2012).

Appellant filed a timely *pro se* PCRA petition on July 29, 2013, and on August 6, 2013, the PCRA court appointed counsel, who filed an amended petition on January 10, 2014. The PCRA court[1] filed a notice of intent to dismiss the PCRA petition without a hearing on February 25, 2014, and dismissed the petition on July 28, 2014. Appellant filed a timely notice of appeal, and the PCRA court directed compliance with Pa.R.A.P. 1925. Appellant filed a timely Rule 1925(b) statement. The PCRA court filed a two-paragraph "opinion" referencing its February 25, 2014 order, which

_____

[1] The PCRA court was not the trial court; the trial judge, the Honorable John K. Reilly, Jr., passed away September 12, 2011. Commonwealth's Brief at 6 n.4.

explained why it intended to dismiss Appellant's PCRA petition without a hearing. PCRA Opinion, 10/20/14, at 1. The PCRA court found that Appellant was unable "to make a colorable claim of prejudice. The evidence that was received by the jury does not cause this [c]ourt to have any reservations that the jury verdict would have been different had this material been excluded." Order, 2/25/14. We agree.

Appellant raises the following issues in his appellate brief to this Court:

I. Did the PCRA Court err or abuse its discretion in failing to grant Appellant a new trial based on a properly pled, preserved and supported IAC claim involving trial counsel's failure to either object, request a mistrial or request a curative instruction regarding opinion evidence improperly solicited by the Commonwealth from Mr. Francioni, said trial counsel failure being prejudicial to Appellant entitling him to relief?

II. Did the PCRA Court err or abuse its discretion in dismissing Appellant's Petition without an evidentiary hearing where Appellant's claim that trial counsel was ineffective for failing to either object, request a mistrial or request a curative instruction regarding the opinion evidence presented by Mr. Francioni, was not patently frivolous, is supported by evidence of record, and where a genuine issue of material fact existed which, if proven, would entitle Appellant to relief?

Appellant's Brief at 5. We address the issues, which are intertwined, together.

When reviewing the propriety of an order granting or denying PCRA relief, this Court is limited to determining whether the evidence of record supports the conclusions of the PCRA court and whether the ruling is free of legal error. *Commonwealth v. Rykard*, 55 A.3d 1177, 1183 (Pa. Super. 2012). We grant great deference to the PCRA court's findings that are

- 3 -

supported in the record and will not disturb them unless they have no support in the certified record. ***Commonwealth v. Rigg***, 84 A.3d 1080, 1084 (Pa. Super. 2014).

In order to obtain collateral relief, a PCRA petitioner must establish by a preponderance of the evidence that his conviction or sentence resulted from one or more of the circumstances enumerated in 42 Pa.C.S. § 9543(a)(2). Instantly, Appellant asserted in his PCRA petition the existence of ineffective assistance of counsel pursuant to 42 Pa.C.S. § 9543(a)(2)(ii). To plead and prove ineffective assistance of counsel, a petitioner must establish: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act. ***Rykard***, 55 A.3d 1177, 1189–1190 (Pa. Super. 2012). A claim of ineffectiveness will be denied if the petitioner's evidence fails to meet **any one** of these prongs. ***Commonwealth v. Martin***, 5 A.3d 177, 183 (Pa. 2010). We reiterate that counsel's representation is presumed to have been effective, unless the petitioner proves otherwise. ***Commonwealth v. Williams***, 732 A.2d 1167, 1177 (Pa. 1999). Further, we have explained that trial counsel cannot be deemed ineffective for failing to pursue a meritless claim. ***Commonwealth v. Loner***, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*).

The underlying basis for the allegation of ineffective assistance of counsel was explained in this Court's memorandum opinion on direct appeal, as follows:

> Bennett argues that the trial court erred by allowing testimony from a victim, Louis Francioni, about Bennett's conduct at a preliminary hearing. Specifically, Bennett complains that Francioni was allowed to testify that Bennett had engaged in a staring match with Francioni, suggesting to the jury that Bennett was trying to intimidate Francioni.
>
> * * *
>
> Prior to the relevant testimony, Bennett's counsel objected, arguing that the testimony was unfairly prejudicial, as Bennett was never charged with witness intimidation. The trial court ruled that Francioni could testify to the incident, but could not proffer any opinion regarding the incident. **See** N.T., 12/14/2008, at 37. The following testimony then occurred:
>
> Q. Mr. Francioni, we left off where you were in this crowded Magistrate's office.
>
> A. Okay.
>
> Q. And I asked you, something happened there?
>
> A. Yes.
>
> Q. Can you tell the ladies and gentlemen of the jury when you were sitting up front then what happened?
>
> A. Okay, and one of the detectives said he obviously would be eventually coming in; and the defendants would keep coming into the courtroom from I guess the courthouse—I mean, the jail house; and then once he eventually came in, after me sitting there for a good bit of time—
>
> Q. Did you recognize him?
>
> A. Right away. Like I just felt like—felt it I [sic] was him, like, that's him.

Q. Okay.

A. And as he proceeded to sit down, with me sitting up there, and the other preliminary hearings going on, I guess he must have recognized me.

Q. What did you observe to make you think that?

A. He started to, like lean into me and like staring me down, started to put paper over his face; and it made me extremely uncomfortable, constantly covering his face with paper, to the point where I started to—I informed the detectives after a good 20 minutes of this happening, he was told to sit back [sic] would not listen. Then he kept doing it. He then was asked about 30 minutes after doing it to leave the courtroom.

*Id.* at 37-38.

Bennett first contends that the trial court's ruling was itself an error, as it permitted presentation of unfairly prejudicial evidence that was merely cumulative. Bennett argues that once Francioni testified that he had identified Bennett, evidence of the staring match added no probative value, while creating unfair prejudice. However, we conclude that the testimony was not merely cumulative; Bennett's actions in staring at Francioni at the preliminary hearing allowed for an inference that Bennett recognized Francioni as well. Furthermore, it was evidence of Bennett's consciousness of guilt, which was relevant. *See Commonwealth v. Johnson*, 576 Pa. 23, 51, 838 A.2d 663, 680 (2003).

Alternatively, Bennett argues that the trial court erred in not enforcing its ruling prohibiting Francioni from offering opinion testimony. However, Bennett did not object to the alleged opinion testimony when it was given; accordingly, this issue is waived. *See* Pa.R.A.P., Rule 302(a), 42 PA. CONS. STAT. ANN. "Even where a defendant objects to specific conduct, the failure to request a remedy such as a mistrial or curative instruction is sufficient to constitute waiver." *Commonwealth v. Strunk*, 953 A.2d 577, 579 (Pa. Super. 2008).

*Bennett*, 617 WDA 2010 (unpublished memorandum at 2–4).

In the direct appeal, this Court clearly determined *sub silencio* that the incident described by the victim was relevant to the central issue at trial, which was Mr. Francioni's identification of Appellant as the person who robbed him. Prior to trial, Appellant had filed two Notices of Alibi, one on November 16, 2009, and one on March 15, 2010. At trial, Appellant attempted to show that this was a case of mistaken identity. N.T., 12/15/09, at 119. In that Appellant entered a crowded courtroom and without any information regarding the victim's identity and location in the room, engaged in an intense staring episode, the testimony was relevant to prove that Appellant recognized Mr. Francioni as the man he had robbed.

Appellant now asserts that trial counsel was ineffective because she failed to object to what Appellant characterizes as "opinion testimony," assumably referencing the victim's single statement, "I guess he must have recognized me." Appellant's Brief at 14. Like the PCRA court, we need not analyze whether counsel's failure to object to Mr. Francioni's statement has arguable merit or counsel's actions lacked an objective reasonable basis because prejudice could not have resulted from counsel's failure to act. *Rykard*, 55 A.3d at 1190. As noted, a claim of ineffectiveness will be denied if the petitioner's evidence fails to meet any one of the prongs. *Martin*, 5 A.3d at 183.

"In order to demonstrate a defendant was prejudiced by counsel's deficient performance, the defendant must 'show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.'" ***Commonwealth v. Burno***, 94 A.3d 956, 976 (Pa. 2014), *cert. denied sub nom.* ***Burno v. Pennsylvania***, 135 S.Ct. 1493 (2015) (quoting ***Hinton v. Alabama***, 134 S.Ct. 1081, 1089 (2014)); ***see also Commonwealth v. Blakeney***, 108 A.3d 739, 749 (Pa. 2014) (to establish prejudice, PCRA petitioner must show that there is a reasonable probability that the outcome of the proceeding would have been different but for counsel's deficient performance).  Moreover:

> The PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied "'that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings.'" ***Commonwealth v. Roney***, 622 Pa. 1, 79 A.3d 595, 604 (2013) (quoting ***Commonwealth v. Paddy***, 609 Pa. 272, 15 A.3d 431, 442 (2011), quoting Pa.R.Crim.P. 909(B)(2)).  "To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." ***Roney***, 79 A.3d at 604–05.

***Blakeney***, 108 A.3d at 749–750.

As the Commonwealth points out, even if Mr. Francioni's characterization of Appellant's actions was excised from the victim's testimony, the facts upon which that conclusion were based undoubtedly were sufficient for the jurors to have inferred it on their own. Commonwealth's Brief at 19.  Furthermore, the victim's testimony

concerning his identification of Appellant was clear, detailed, descriptive, and unwavering. That testimony is as follows:

[By the Commonwealth]:

Q. And with respect to that, the night of February 8, something unusual happened to you?

A. Yes, sir.

Q. And start with the time. What time and where were you delivering pizza? Tell the ladies and gentlemen of the jury.

A. It was about 9:30ish, at night. I was delivering to Friendship. The address was 435 South Graham Street; and as I pulled my car up, it was a two-lane street, I parked my car, double parked. I put my blinkers on. I had my car sign on. I walked up to the building, delivered the pizza, and came back to my car. I was just coming back to my car. I opened my door. As soon as I opened my door I heard footprints from around another car; and as I looked, I saw a hooded figure dressed in all black, white lettering on the hood; and I tried to pull my door shut. As I did that a hand reached on top of the door pushed onto my neck. At that time he demanded all the money. I looked down. I just felt a thumb on my neck. I saw the serrated knife blade. At that point I was extremely nervous and—sorry.

Q. Let me stop you right there.

A. Okay.

Q. When you realized it was a serrated knife, can you explain as best you can remember how long a blade it was? What did it look like?

A. Okay. It was generally like you would find in your kitchen maybe, old, rusty, black handled, maybe like a steak knife, something like that.

Q. When it's pressed against your neck where on your neck if you can indicate?

A. It was sitting right like this. It was pressed up at the top. I did not receive a cut or anything from the blade, but—

Q. What were you thinking when that was pressed against you?

A. I was thinking if it were to go in me, I'm going to have some major bleeding problems.

Q. Were you afraid you were going to get seriously hurt?

A. Yeah, if I did not listen to him.

Q. What was it that he said to you—

A. He said—

Q. —when he opened your door and put the rusty blade to your neck?

A. Give me all your money.

Q. And what did you do?

A. I reach[ed] down to my left pocket, grabbed all the money I had out, and I handed it to him. He asked me if there was anymore. I looked up at him, and I dug into my pocket, shuffled? I had khakis on. I shook my pocket. The change jingled. I asked him if he wanted that. It was about five seconds. Like, it was like a five-second time period before anything was said. Then he said, no. Then he just took off down the street.

Q. Now, you indicated that he was wearing all black?

A. Yes.

Q. And had a hood on?

A. Yes.

Q. Tell the ladies and gentlemen—explain to the ladies and gentlemen of the jury what it is that you saw of him. You said it took five seconds to answer about the change. They weren't

there. Run through what you were seeing, what you were thinking, the look you got of his face.

A. Okay. After I gave him the money I looked up, saw the ski mask which was tightly fitted, a nice ski mask right on the tip of his nose, where the hoody would take up, the rest of his face was shown; and remembering that when I looked at him, I just froze. Looking back, still looking back, you could still see the piercing eyes of his face. When I looked back on about that day, like, engrained into my head, and I remember looking that he was not an unattractive man. I remember thinking that. Just that look that he gave me and the way I remembered it the whole entire ride back to the pizza shop, how I would not forget it.

Q. Now, you heard defense counsel in their opening mentioning that all you saw was eyes. That's not true, is it?

A. No. I saw his cheeks, high eyebrows, the make-up of his face, the bridge of his nose. I just really remember zoning into like that point, zoning into this area of his face . . . .

N.T., 12/14/09, at 29-33.

Not only did Mr. Francioni describe Appellant's features in detail, he recalled Appellant's piercing eyes, high eyebrows, indeed, the entire make-up of Appellant's face, all attributes that so impressed the victim he described them as unique characteristics he "would not forget." *Id*. at 32. Mr. Francioni's detailed and certain identification of Appellant tied Appellant to the robbery, even without considering the victim's testimony about the staring incident. Thus, Appellant cannot carry his burden of showing prejudice from trial counsel's alleged ineffectiveness. *Accord Commonwealth v. Wright*, 961 A.2d 119, 148 (Pa. 2008) ("When it is clear the party asserting an ineffectiveness claim has failed to meet the

prejudice prong of the ineffectiveness test, the claim may be dismissed on that basis alone, without a determination of whether the first two prongs have been met."); *see also Burno*, 94 A.3d at 977 (claim of ineffectiveness failed because petitioner did not carry burden demonstrating prejudice). Thus, we conclude that Appellant has failed to prove ineffectiveness, and the PCRA court cannot be faulted for dismissing the PCRA petition without a hearing.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/20/2015