J. S76019/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| QUDRE MCMILLAN, | : | |
| | : | |
| APPELLANT | : | |
| | : | No. 2490 EDA 2015 |

Appeal from the Judgment of Sentence July 13, 2015
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0005532-2014

BEFORE: STABILE, J., DUBOW, J., and STEVENS, P.J.E. [*]

MEMORANDUM BY DUBOW, J.:               **FILED NOVEMBER 23, 2016**

Appellant, Qudre McMillan, appeals from the Judgment of Sentence

entered by the Bucks County Court of Common Pleas on July 13, 2015.

After careful review, we affirm.

The facts, as established at trial and set forth by the trial court, are as

follows:

> The [v]ictim in this matter is a twenty-year-old resident of
> Philadelphia and mother of two children. In August of
> 2014, the victim, a former home health aide, had begun to
> engage in prostitution, advertising her services as an
> "escort" on an internet website called "Backpage."
>
> On August 8, 2014, at approximately 3:00 a.m., the victim
> received a telephone call from a man identifying himself as
> "Kareem," later identified as[, co-defendant,] twenty-one-

---

[*] Former Justice specially assigned to the Superior Court.

year-old Kareem Evans [("Evans")]. The victim agreed to meet Evans at 213 Market Street in Bristol Borough, Bucks County. Lorenzo Broggi[] drove the victim to the prearranged location where she met Evans. Evans then led her on foot to another location, an unoccupied residence located on Cedar Street in Bristol Borough. After entering an unfurnished backroom of that building, the victim plugged the charger for her cellphone into a wall outlet.

The victim, already concerned about the change of location, became frightened when she heard someone jiggling the handle of the front door. When Evans left the backroom and headed for the front door, the victim immediately used her cell phone to call Mr. Broggi, her driver. When Evans returned, he attempted to take the phone from the victim but she was able to temporarily regain control of it. The victim then attempted to leave the building. When she began to do so, she was unexpectedly confronted by a second man, later identified as [Appellant]. [Appellant] was armed with a shotgun. He pointed it at her and told her not to move. Raising both hands, the victim told [Appellant] that he could take the ten dollars in her pocket and her phone. [Appellant] continued to approach the victim, forcing her to retreat into the backroom.

Once the victim was again in the backroom, Evans physically restrained her from behind and placed his hand over her mouth and nose to prevent her from breathing. Fearful for her life, she begged him not to kill her, repeatedly telling him, "I have kids." As she struggled with Evans, she heard a car horn sounding. Evans told her "not to f—ing scream" and he would let her live. She complied, and he released her. The victim sat in the corner crying as [Appellant] and Evans attempted to access the phone to see if she had called anyone. When asked if she had made a call, she told them she had not.

Evans then "dismissed" [Appellant] from the room and proceeded to orally and vaginally rape the victim, threatening to "punch her in her f—ing head" and kill her if she did not do what she was told. Evans ejaculated inside her. As Evans sexually assaulted the victim, [Appellant]

occasionally watched from his position in the hallway. When Evans then left the room, [Appellant] entered. The victim continued to cry as [Appellant] vaginally raped her. He ejaculated on her buttocks. [Appellant] then left the room. While the victim waited for her attackers to return, she heard a door shut. When neither attacker returned after two minutes, the victim fled the building.

Shortly after dropping the victim off at the Market Street address where Evans was waiting, Mr. Broggi received a call from the victim. When he answered, the victim did not speak to him. Mr. Broggi heard a scuffle in the background. As he listened, he heard a male voice. Mr. Broggi testified that he heard the victim crying and yelling. He specifically heard her say that she did not have any money with her. He also heard her tell someone to leave her alone, and not to hurt her. The phone call abruptly ended. Realizing that the victim was in trouble, Mr. Broggi returned to Market Street in an attempt to locate the victim. He circled the area sounding the horn of his vehicle. Mr. Broggi's efforts to locate the victim were unsuccessful.

At approximately 4:30 a.m., Arthur Carter and his son were driving on Market Street approaching Cedar Street when the victim ran out from Cedar Street and ran in front of his van. When Mr. Carter lowered his window to speak to her, she told him that she had been raped and that she needed help. Mr. Carter testified that the victim was hysterical, that she was crying, and that her hair looked "like somebody had been dragging her around." Her clothes were askew and her underwear was pulled out of her pants. Mr. Carter called 911 and remained with her until assistance arrived. The victim was then transported from the scene to Abington Memorial Hospital for a Sexual Assault Examination. During that examination, vaginal and rectal swabs were obtained.

A search warrant was obtained for the Cedar Street address. During the search, the cell phone charger to the victim's telephone was found on the floor of the back room of the residence. Police contacted the victim's cell phone carrier who informed them that the victim's cell phone was located at the intersection of Headley Street and Pine

Street in Bristol Borough, with an uncertainty of thirty-five meters. Evans was staying at 801 Pine Street which is located at the intersection of Headley and Pine Streets. That residence is approximately six blocks away from Cedar Street where the assaults occurred.

On August 9, 2014, police observed [Appellant] in the area of Cedar Street. On that same date, police executed a search warrant of 801 Pine Street. When police arrived, Evans was present. While detectives were executing the search warrant, [Appellant] arrived at the residence. The victim's cell phone was found concealed beneath a seat cushion of a sofa inside the residence. Kalesha Cruz, Evans's fiancée, told police and later testified that she observed [Appellant] give Evans the cell phone on Friday, August 8, 2014.

A photo array, which included an image of Evans as Photograph Number 2, was displayed to the victim. The victim almost immediately pointed to Photograph Number 2, gasped, said, "That's him. That's the man who raped me," and began to cry.

The vaginal and rectal swabs of the victim were submitted to the Pennsylvania State Police Bureau of Forensic Services for serological and DNA analysis. The items were determined to contain spermatozoa and the DNA of [Appellant] and Evans.

Trial Ct. Op., 11/13/15, at 2-5 (citations omitted).

On December 23, 2014, the Commonwealth filed a Motion to Consolidate Appellant's trial with that of Kareem Evans ("Evans").[1] The trial court held a hearing on the Motion on January 27, 2015. Neither Appellant's

---

[1] That same day, the Commonwealth also filed a Motion to Consolidate for trial the charges pending against Evans. The Commonwealth withdrew that Motion, and tried those charges against Evans separately.

counsel nor counsel for Evans opposed the Motion to Consolidate. The trial court, therefore, ordered the cases consolidated.

Prior to trial, on February 27, 2015, the Commonwealth filed a written motion seeking to admit evidence of co-defendant Evans' acts of witness intimidation for the purposes of demonstrating consciousness of guilt. After an offer of proof, the trial court granted the motion over the objections of counsel for Appellant and Evans.

On March 9, 2015, Appellant and Evans' three-day joint jury trial began. The Commonwealth presented the testimony of ten witnesses, including the victim. The court ordered all non-police and non-expert witnesses sequestered from the courtroom during witness testimony. Relevant to this appeal, during the victim's cross-examination by Appellant's counsel, the victim became distraught and asked to leave the witness stand. The court recessed for 15 minutes, after which, over Appellant's counsel's objection, the court permitted the victim to retake the stand and Appellant's counsel to continue with cross-examination.

On March 13, 2015, the jury convicted Appellant of Rape by Threat of Forcible Compulsion, Robbery by Threat of Serious Bodily Injury, Robbery by Force, Terroristic Threats, Theft by Unlawful Taking, Criminal Conspiracy to

Commit Robbery by Threat of Serious Bodily Injury, and Criminal Conspiracy to Commit Theft.[2, 3]

The court deferred sentencing for Appellant to undergo an evaluation by the Sexual Offender Assessment Board pursuant to 42 Pa.C.S. § 9799.24. Based upon the findings of the Board, and with the agreement of the parties, the court found Appellant to be a Sexually Violent Predator.

On July 13, 2015, the court sentenced Appellant to an aggregate sentence of 20-40 years' incarceration, comprised of one term of 10-20 years' incarceration on the conviction for Rape by Threat of Forcible Compulsion, and two terms of 5-10 years' incarceration on the convictions for Robbery by Threat of Serious Bodily Injury, and Criminal Conspiracy to Commit Robbery by Threat of Serious Bodily Injury, all first-degree felonies.

---

[2] 18 Pa.C.S. § 3121(a)(2); 18 Pa.C.S. § 3701(a)(1)(ii); 18 Pa.C.S. § 3701(a)(1)(v); 18 Pa.C.S. § 2706(a)(1); 18 Pa.C.S. § 3921(a); and 18 Pa.C.S. § 903(c), respectively.

[3] The jury also convicted Evans of Rape by Threat of Forcible Compulsion, Involuntary Deviate Sexual Intercourse by Threat of Forcible Compulsion, Robbery by Threat of Serious Bodily Injury, Robbery by Force, Terroristic Threats, Theft by Unlawful Taking, Criminal Conspiracy to Commit Robbery by Threat of Serious Bodily Injury, and Criminal Conspiracy to Commit Theft. The court sentenced Evans to an aggregate sentence of 40-80 years' incarceration. Evans' appeal from his Judgment of Sentence is pending before this Court. *See Commonwealth v. Evans*, No. 2475 EDA 2015.

A separate jury convicted Evans of Criminal Solicitation (Witness Solicitation). 18 Pa.C.S. § 902(a). The court sentenced Evans to 3 ½ to 10 years' incarceration, to be served consecutively to the sentence Evans challenges in his appeal at No. 2475 EDA 2015. Evans' appeal from his Judgment of Sentence for Criminal Solicitation (Witness Intimidation) is pending before this Court. *See Commonwealth v. Evans*, 383 EDA 2016.

The court ordered Appellant to serve his sentences consecutively, but imposed no further penalty on the other convictions.

Appellant did not file a Post-Sentence Motion. On August 10, 2015, Appellant filed a timely Notice of Appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following two issues for our review:

> 1. Did the lower court err, during this joint trial, in allowing the Commonwealth to introduce evidence against the co-defendant alone, that he (Kareem Evans) attempted to persuade the complaining witness not to testify, notwithstanding the Court's limiting instruction that the evidence could only be considered against Kareem Evans and not Appellant?
>
> 2. Did the trial judge err in permitting the complainant to resume her testimony after she left the courtroom without permission during cross-examination, and spoke with members of the district attorney's office and one of the prosecuting police officers, in violation of the sequestration order?

Appellant's Brief at 4.

In his first issue, Appellant claims that the trial court erred in admitting evidence, pertaining to Evans only, of Evans's acts of witness intimidation and Evans' plan to induce the victim not to testify.[4] Appellant's

---

[4] Appellant also argues in his brief that the Commonwealth violated his constitutional rights by failing to give him adequate notice, pursuant to Pa.R.Crim.P 582, of the Commonwealth's intent to consolidate his trial with that of Evans. *Id.* at 18-19. Our review of the record indicates that Appellant did not raise this issue before the trial court. Accordingly, we find it waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal").

Brief at 14. The challenged evidence, admitted upon the Commonwealth's Motion as proof of Evans' consciousness of guilt, consisted of redacted portions of five prison telephone calls between Evans and his fiancée Kaleshia Cruz ("Cruz"), and a letter that Evans wrote to Cruz, which demonstrated that Evans and Cruz planned to pay the victim not to testify at trial. The court also permitted Cruz to testify.

In support of this claim, Appellant first argues that the Commonwealth's failure to give him notice of its Motion to Admit Other Crimes, Wrongs or Acts prior to the date of trial prejudiced him. *Id.* at 19. Appellant claims that, had he known that the court would permit the admission of the Commonwealth's evidence of Evans' acts of witness intimidation to show Evans' consciousness of guilt, "he may have wanted . . . to seek a severance. [However, i]t was too late at that point, as both cases were attached for trial." *Id.* Our review of the record, including the transcript of the argument on the Commonwealth's Motion, indicates that Appellant never raised the issue of lack of notice of the Motion before the trial court. Accordingly, we find this issue waived.[5] *See* Pa.R.A.P. 302(a).

Next, Appellant argues that the admission of this evidence to show Evans' consciousness of guilt prejudiced Appellant. *Id.* at 19. He argues

---

[5] Moreover, even if Appellant had preserved this issue, it would lack merit, as the Commonwealth served Appellant's counsel with this Motion on February 27, 2015. *See* Commonwealth's Motion to Admit Other Crimes, Wrongs or Acts, Proof of Service, 2/27/15.

that he "was forced to proceed to trial with a co-defendant who attempted to intimidate a witness," and implies that the jury was incapable of separating Evans's conduct from his conduct. *Id.* Appellant argues that the allegation that Evans attempted to intimidate a witness was the "most serious allegation against Kareem Evans" and that exposing the jury to evidence of this conduct deprived Appellant of a fair trial. *Id.* at 19, 23. He claims that the danger of unfair prejudice and jury confusion outweighed the probative value of the witness intimidation evidence. *Id.* at 22.

Initially, we note that,

> [t]he standard of review employed when faced with a challenge to the trial court's decision as to whether or not to admit evidence is well settled. Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the trial court's decision absent a clear abuse of discretion. Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Young*, 989 A.2d 920, 924 (Pa. Super. 2010) (internal citations omitted).

It is well-settled that "any attempt by a defendant to interfere with a witness's testimony is admissible to show a defendant's consciousness of guilt." *Commonwealth v. Rega*, 933 A.2d 997, 1009 (Pa. 2007).

In the instant matter, the trial court explained its evidentiary ruling as follows:

The evidence admitted at trial established that following his arrest, Evans and his fiancée, Kalesha Cruz, entered into a conspiracy to identify and locate the victim and then to offer her money in an effort to persuade her not to appear and/or testify in court. This [c]ourt permitted the Commonwealth to introduce a letter written by Evans shortly after his arrest, recorded prison calls between Evans and Cruz and Cruz's in-court testimony as evidence of consciousness of guilt.

In the letter Evans wrote:

> I was wrong. We were supposed to rob her, that's it. But things got out of hand. She a girl from Back Page prostituting for money. If you can get in touch with her and offer her money, I'm sure she won't show up. You just need to get the correct information . . . .

In a recorded call that occurred on August 14, 2014, Cruz advised Evans, "No luck yet. I'm searching. I sent your brother the information, so hopefully he's been searching." Cruz testified that she was explaining the status of her efforts to find the victim. In a recorded call that occurred on August 30, 2014, Cruz told Evans that she had to think of what to say. At trial, Cruz testified that she was referring to what she should say when she talked to the victim. During the August 30th conversation, Evans told Cruz that, if she talks to the victim, she should mention the money first. In a recorded call that occurred on August 31, 2014, Cruz told Evans that she called "the number." At trial, Cruz testified that this comment referred to the fact that she had called the telephone number for "Backpage," the website Evans and [Appellant] used to contact the victim. Cruz also told Evans that she would try to speak with the victim when the victim appeared to testify at an upcoming court date.

. . . Evidence concerning Evans' attempt to offer the victim a bribe not to testify was therefore admissible against Evans.

Trial Ct. Op. at 5-6 (citations omitted).

- 10 -

We agree with the trial court that it properly admitted this evidence for the purposes of establishing Evans' consciousness of guilt. However, our inquiry does not end here, as we must determine whether its probative value as to Evans' consciousness of guilt was outweighed by any prejudice to Appellant.

Our Supreme Court addressed the admission of witness intimidation evidence at trial against only one of two co-defendants in *Commonwealth v. Patterson*, 546 A.2d 596 (Pa. 1988), in the context of joinder and severance. In that case, the Commonwealth charged both co-defendants with rape, robbery, burglary, aggravated assault, and conspiracy arising from the same incident and involving the same evidence. *Id.* at 597. Only one co-defendant was charged with witness intimidation. *Id.* On appeal, our Supreme Court held that severance of the trials was not required, finding that the defendant suffered no prejudice. The *Patterson* Court affirmed the rationale of the trial court, which concluded that the "evidence pertaining to the intimidation charge unmistakably and unequivocally pointed to the co-defendant only." *Id.* at 601. The *Patterson* Court also agreed with the trial court's conclusion that a "cautionary instruction[] could adequately dispel any prejudicial effect on [a defendant] from the introduction of evidence on intimidation relating to his co-defendant." *Id.* When considering the balance a court must strike between probative value and prejudicial effect of evidence admitted against only one co-defendant,

- 11 -

the **Patterson** court noted that "[w]e cannot say that the possible prejudicial effect of the testimony on intimidation is more harmful than the prejudicial effect that we habitually tolerate in joint trials where evidence is introduced against only one of the defendants." **Id.**

Applying the holding in **Patterson** to the instant matter, the trial court opined as follows:

> As in **Patterson**, the defendants in the instant case were charged with identical rape and robbery offenses. The evidence of witness intimidation against one defendant arose directly out of the rape and robbery charges and clearly related only to Evans. The evidence was, therefore, capable of separation by the jury and there was no danger of confusion. As in **Patterson**, appropriate and unambiguous limiting instructions were given. Prior to the admission of the evidence, this [c]ourt instructed the jury:
>
> > Ladies and gentlemen, there are two separate defendants being tried here. Both of them are charged with the same criminal offenses, but they are two separate cases and they must be decided individually.
> >
> > In this particular case the Commonwealth is now about to introduce evidence regarding conduct by one of the defendants, Kareem Evans. This evidence is being admitted against him and only him. This is not evidence that is in any way connected, and you may not consider this evidence as against [Appellant].
>
> Prior to the presentation of the telephone calls between Evans and Cruz, this [c]ourt instructed the jury:
>
> > Again, let me remind the jury. These will be telephone calls that are alleged by this witness and by the Commonwealth to be telephone calls between Mr. Evans and his fiancée. This testimony is being offered solely against Mr. Evans. You may not

- 12 -

consider any statements made in this telephone call against his co-defendant . . . . You may consider only the conversation that has not been redacted and only consider that evidence against Kareem Evans.

During the testimony of Cruz, this [c]ourt instructed the jury:

Ladies and gentlemen, I want to be clear. As I said, you may only consider the statements made by Mr. Evans against Mr. Evans. Any conversations between Mr. Evans and this witness may only be considered against him.

During final instructions, this [c]ourt reiterated to the jury that they could not consider any evidence of the alleged witness intimidation against [Appellant]:

There was another piece of evidence that was only admissible against one defendant. The Commonwealth introduced evidence – and if you believe the evidence, it is for you to determine whether you do or not and for you to determine what the weight will be. The Commonwealth has introduced evidence that Mr. Evans contacted and was in contact with his fiancée, and that Miss Cruz – Miss Cruz testified.

And you heard telephone calls that – between Mr. Evans and Miss Cruz, and you also saw a letter that was written by or alleged to be written by Mr. Evans to Miss Cruz. All of that evidence was admitted by the Commonwealth to establish that Mr. Evans engaged in conduct and conspired by his fiancée to interfere in this prosecution, to pay off a witness so that the witness would not appear in court and testify.

The Commonwealth has argued – and this evidence is admissible, if you believe it. If you find it to be true – and the Commonwealth introduced that testimony and it is admissible to show that evidence was – he was conscious of his own guilt and amounts

> basically to what destruction of evidence by having a witness who had critical information not to appear in court.
>
> That evidence is admissible solely – assuming you believe it, it would be admissible against Mr. Evans and only Mr. Evans.  You may not use – any attempt that you find to obstruct justice in this case, you may not use it – you may use it against Mr. Evans, but you may not use it against [Appellant].
>
> There was no evidence that [Appellant] was involved in that transaction or those conversations or the decision of Miss Cruz and Mr. Evans to contact or attempt to contact the victim in this case.
>
> So in terms of that, it is only admissible against one defendant.

Trial Ct. Op. at 7-9 (citations omitted).

Our review of the notes of testimony indicates that the trial court gave the jury "unambiguous limiting instructions" directing them to consider the witness intimidation evidence only against Evans, and not against Appellant. *Id.* at 7.  Because a "jury is presumed to have followed the trial court's instructions[,]"[6] we agree with the trial court that the evidence was "capable of separation by the jury and there was no danger of confusion."  *Id.* Accordingly, we conclude that Appellant was not prejudiced by the admission of the challenged evidence, and Appellant's first claim of error fails.

In his second issue, Appellant claims the trial court improperly permitted the victim to continue to testify after returning to the witness

---

[6] *Commonwealth v. Burno*, 94 A.3d 956, 977 (Pa. 2014).

stand. Appellant's Brief at 27. He avers that the trial court did not adequately inquire into the contents of the conversations in which the victim participated during the court's recess in order to ascertain whether victim violated the court's sequestration order. *Id.*

A trial court may sequester witnesses in order to "prevent a witness from shaping his [or her] testimony with evidence presented by other witnesses." *Commonwealth v. Henry*, 706 A.2d 313, 320 (Pa. 1997) (citation omitted). Whether there has been a violation of a sequestration order is a question of fact for the trial court. *Commonwealth v. Marinelli*, 690 A.2d 203, 219 (Pa. 1997). This Court will not overturn the decision of the trial court where it is "supported by sufficient credible evidence." *Id.*

With respect to Appellant's claim, the trial court opined as follows:

> In the instant case, after the victim left the witness stand, this [c]ourt took a fifteen minute recess. Prior to allowing the witness to continue her testimony, this [c]ourt allowed counsel to question the victim as to whether she discussed her testimony while outside the courtroom. The victim testified that she did not. This [c]ourt also identified the individuals who spoke with the victim and asked each person individually if the content of the victim's testimony was discussed. Each person represented to this [c]ourt that her testimony was not discussed. Moreover, counsel for the [d]efendants conceded that they had no basis [to] contradict the representations made to this [c]ourt. This [c]ourt therefore properly found that no violation of the sequestration order occurred.

Trial Ct. Op. at 9-10 (citations omitted).

Our review of the evidence of record, including the trial transcript, confirms the trial court's conclusion that no violation of the court's

- 15 -

sequestration order occurred. The victim left the witness stand abruptly during her cross-examination, during which time the court recessed. The victim then returned to the courtroom. The victim testified, and the parties who spoke to the victim during the court's recess reported, that they did not discuss the victim's testimony. N.T., 3/10/14 (morning), at 126-27, 141-42. Furthermore, neither counsel for Appellant nor counsel for Evans reported to the court that they had any reason to believe that the victim discussed the content of her testimony during the recess. *Id.* at 124-26.

Moreover, permitting the victim to continue her testimony after the recess did not undermine the purpose of sequestration—preventing a witness from molding her testimony based upon testimony given by a previous witness. The victim in this case was not present during the testimony of any other witnesses and therefore, even after removing herself from the witness stand during her testimony, could not have shaped her testimony in accordance with testimony previously taken from other witnesses. For these reasons, we conclude there was sufficient credible evidence for the trial court to find that no sequestration violation took place. Accordingly, Appellant is not entitled to relief on this issue.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/23/2016