J-S33032-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TEVIN PATTERSON | : | |
| | : | |
| Appellant | : | No. 913 WDA 2022 |

Appeal from the Judgment of Sentence Entered October 7, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0015124-2017

BEFORE:   BENDER, P.J.E., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                **FILED: October 24, 2023**

Tevin Patterson appeals the October 7, 2021 aggregate judgment of sentence of life imprisonment without the possibility of parole plus 7 to 14 years' imprisonment imposed after a jury found him guilty of first-degree murder, burglary, and carrying a firearm without a license.[1]  Appellant was also ordered to pay $6,286.00 in restitution to the victim's surviving family members. Contemporaneously with this appeal, Rachael Santoriella, Esq. (hereinafter, "Counsel"), has filed a brief and petition to withdraw in accordance with **Anders v. California**, 386 U.S. 738 (1967), **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009), and its progeny.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(a), 3502(a)(1)(i), and 6106(a)(1), respectively.

After careful review, we grant Counsel's petition to withdraw and affirm the judgement of sentence.

The trial court summarized the relevant facts of this case as follows:

> On August 8, 2017, at approximately 3 p.m., UPMC security guard, David Thoma, was in the area of the Oak Hills Apartments in the City of Pittsburgh getting lunch and heard several gunshots. After hearing the gunshots, he proceeded to search the area in his vehicle and observed an African American male, later identified as Appellant, wearing a yellow hoodie and jeans missing a shoe running between the apartments down a thruway. Thoma made visual contact with Appellant who then put the hood up on his hoodie. Thoma initiated a conversation with Appellant who made statements that he was looking for his sister. Thoma observed Appellant to be out of breath and bleeding from the lip. Thoma exited his vehicle, but Appellant took off running toward the back of the apartment complex. Thoma pulled his taser and commanded Appellant to stop; however, Appellant continued to flee the area and he was unable to apprehend him at that time. He then contacted 9-1-1 to report the encounter.
>
> Curt Colotto, a maintenance worker for Oak Hills Apartments, was in the area at the time of the shooting and was standing next to his vehicle when he witnessed Appellant come from behind 475 Oak Hill Drive and proceed into the woods. Appellant was wearing a yellow hoodie but Colotto did not recall what type of shoes he was wearing.
>
> Officer John Baker of the City of Pittsburgh police responded to a shots fired call in the Oak Hill neighborhood at approximately 3:02 p.m. He proceeded to the area and subsequently received information that a male had been shot in the head and that the suspect had run into a nearby wooded area. He proceeded toward the wooded area and observed Appellant emerge from the woods without a shirt or shoes. He exited his vehicle and commanded

Appellant to stop. Appellant stopped briefly putting his hands in the air and stated, "I didn't do it," but then absconded down the sidewalk running into the woods. A chase ensued and Appellant was apprehended and taken into custody at approximately 3:12 p.m.

Officer Tanya Szuch with the City of Pittsburgh police and her partner, Officer David McManus, responded to the victim's residence after receiving a report that Jamal Blair and Arneta Dyer had returned to their home located at 525 Oak Hill Drive and had found their son, Calvin Turner, deceased laying at the bottom of the staircase blocking the front door. Upon arrival, they located the victim deceased at the bottom of the steps laying on his stomach in a pool of blood. They secured the residence finding no one else in the home and contacted the homicide division.

Thereafter, homicide Detective Robert Shaw of the Pittsburgh Police responded to the victim's residence and he, along with detectives Kraeer and Crawford, processed the scene. The rear door of the residence did not appear to have any damage which would have indicated a forced entry. However, the windows in the kitchen were open, but Detective Shaw had received information that the windows had been shut prior to the incident. The victim's body was positioned at the bottom the steps and by the front door, thus blocking entry or exit through that door. A child's toy gun and an empty backpack were located in close proximity to the body with a pair a gray sneakers and a single orange multi-colored sneaker located at the victim's thigh. Several bullet strikes and holes were located in the ceiling at the top of the steps. A firearm was located in the victim's dresser drawer wrapped in a sock and two broken cell phones were also recovered from the scene.

Evidence was recovered from the wooded area where Appellant was apprehended, which included a single orange sneaker matching the orange sneaker found next to the victim's body, and a yellow Charlie Brown hoodie with debris and blood stains on the right sleeve

- 3 -

and high velocity impact blood spatter on the front of hoodie. The detective photographed Appellant on the day of the murder after he was taken into custody, which showed an injury to his right elbow area consistent with the blood stain found on the hoodie recovered from the wooded area. Appellant did not have any further noticeable injuries.

Upon autopsy, the victim was found to have sustained four penetrating gunshot wounds, which included a gunshot wound to the left perioral area of the face with the bullet recovered from the right cheek and three gunshot wounds to the victim's chest, which perforated the right lower and upper lobes of the left lung, a rib, the pericardium, the right and left ventricles of the heart, as well as the right lung with the manner of death ruled a homicide. The four bullets recovered from the victim were found to have been discharged from the same firearm but not from the firearm recovered at the victim's residence. GSR tests performed on Appellant's hands showed seven single component particles. The blood stains on the sleeve of the recovered yellow hoodie matched that of Appellant, and the blood stains recovered from the front of the hoodie matched that of the victim. Appellant did not possess a license to carry a firearm. Appellant was arrested and charged as noted hereinabove.

Trial court opinion, 1/9/23 at 4-8 (citations to notes of testimony and footnotes omitted).

On June 8, 2021, Appellant proceeded to a jury trial in connection with this incident. Following a three-day trial, the jury found Appellant guilty of first-degree murder, burglary, and carrying a firearm without a license on June 10, 2021. As noted, the trial court sentenced Appellant to life imprisonment without the possibility of parole plus 7 to 14 years' imprisonment on October 7, 2021. Appellant did not file a timely notice of appeal.

On April 5, 2022, Appellant filed an untimely *pro se* notice of appeal and Counsel was appointed. On June 16, 2022, a panel of this Court quashed Appellant's appeal as untimely and remanded this case back to the trial court. On June 27, 2022, Counsel filed a petition on Appellant's behalf pursuant to the Post Conviction Relief Act ("PCRA"),[2] requesting the reinstatement of his appellate rights. On July 14, 2022, the PCRA court entered an order granting Appellant's PCRA petition and reinstating Appellant's post-sentence motion and appellate rights *nunc pro tunc*. Appellant did not file any post-sentence motions and the instant appeal followed on August 10, 2022.

On August 25, 2022, the trial court ordered Appellant to file a concise statement of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(b). Following an extension, Counsel filed a Rule 1925(b) statement on Appellant's behalf on November 14, 2022. On January 9, 2023, the trial court filed its Rule 1925(a) opinion. Thereafter, on May 17, 2023, Counsel filed an *Anders* brief and a petition to withdraw. Appellant has not responded to Counsel's petition to withdraw.

As a preliminary matter, to withdraw under *Anders*, counsel must satisfy certain technical requirements. First, counsel must "petition the court for leave to withdraw and state that after making a conscientious examination of the record, [s]he has determined that the appeal is frivolous."

---

[2] 42 Pa.C.S.A. §§ 9541-9546.

*Commonwealth v. Martuscelli*, 54 A.3d 940, 947 (Pa.Super. 2012), quoting

*Santiago*, 978 A.2d at 361.  Second, counsel must file an *Anders* brief, in

which counsel:

> (1) provide[s] a summary of the procedural history and facts, with citations to the record; (2) refer[s] to anything in the record that counsel believes arguably supports the appeal; (3) set[s] forth counsel's conclusion that the appeal is frivolous; and(4) state[s] counsel's reasons for concluding that the appeal is frivolous.  Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

With respect to the briefing requirements, *Anders* does not require

"that counsel's brief provide an argument of any sort, let alone the type of

argument that counsel develops in a merits brief.  [W]hat the brief must

provide under *Anders* are references to anything in the record that might

arguably support the appeal." *Santiago*, 978 A.2d at 359-360.

Finally, *Anders* counsel must furnish a copy of the *Anders* brief to her

client and "advise[] him of his right to retain new counsel, proceed *pro se* or

raise any additional points that he deems worthy of the court's attention, and

attach[] to the *Anders* petition a copy of the letter sent to the client."

*Commonwealth v. Daniels*, 999 A.2d 590, 594 (Pa.Super. 2010) (citation

omitted).  "[If] counsel has satisfied the above requirements, it is then this

Court's duty to conduct its own review of the trial court's proceedings and

render an independent judgment as to whether the appeal is, in fact, wholly

frivolous." ***Commonwealth v. Goodwin***, 928 A.2d 287, 291 (Pa.Super. 2007) (***en banc***) (quotation marks and quotation omitted).

Our review of Counsel's petition to withdraw, supporting documentation, and her ***Anders*** brief reveals that she has substantially complied with all of the foregoing requirements. We note that Counsel furnished a copy of the brief to Appellant, and ultimately advised him of his right to retain new counsel, proceed ***pro se***, and/or raise any additional points that he deems worthy of this Court's attention.[3] Counsel's revised letter properly advised Appellant of his rights under ***Commonwealth v. Millisock***, 873 A.2d 748, 751-752 (Pa.Super. 2005). As Counsel has complied with all of the requirements set forth above, we conclude that Counsel has satisfied the procedural requirements of ***Anders*** and ***Santiago***. We, therefore, proceed to conduct an independent review to ascertain whether the appeal is wholly frivolous. ***See Commonwealth v. Yorgey***, 188 A.3d 1190, 1197 (Pa.Super. 2018) (***en banc***).

_____

[3] The record reflects that Counsel's initial notification letter did not properly inform Appellant of his right to proceed ***pro se*** or retain private counsel. Pursuant to this Court's May 19, 2023 order, Counsel was thereafter directed to file seven copies of a letter addressed to Appellant advising him of his immediate right to proceed ***pro se*** or with privately retained counsel and a proof of service on Appellant within 14 days. Counsel, however, failed to timely comply. Accordingly, on June 9, 2023, this Court issued an order directing Counsel to comply with its May 19th order within five days. The same day, this Court received a response from Counsel, notifying it that she had served a new, revised notification of rights letter on June 9, 2023 that properly informed Appellant of his immediate right to proceed ***pro se*** or with privately retained counsel.

In her *Anders* brief, Counsel sets forth the following issue for Appellant:

1. Whether the trial court erred in denying the Appellant's motion for judgment of acquittal at the close of the Commonwealth's case as there was insufficient evidence [of the crimes of first-degree murder, burglary, and carrying a firearm without a license] to submit the case to the jury?

*Anders* brief at 5.

"A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge." *Commonwealth v. Fitzpatrick*, 159 A.3d 562, 567 (Pa.Super. 2017) (citation omitted), *appeal denied*, 173 A.3d 255 (Pa. 2017). Our standard of review in evaluating a challenge to the sufficiency of the evidence is as follows:

In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to prove every element of the offense beyond a reasonable doubt. As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. Any question of doubt is for the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Thomas*, 988 A.2d 669, 670 (Pa.Super. 2009) (citations omitted), *appeal denied*, 4 A.3d 1054 (Pa. 2010).

- 8 -

"The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Commonwealth v. Hopkins*, 747 A.2d 910, 913 (Pa.Super. 2000) (citation omitted).

Instantly, Appellant challenges whether the Commonwealth presented sufficient evidence to sustain his convictions for first-degree murder, burglary, and carrying a firearm without a license. First-degree murder is an intentional killing, which is defined as a "willful, deliberate and premeditated killing." 18 Pa.C.S.A. § 2502(a), (d). "To obtain a first-degree murder conviction, the Commonwealth must demonstrate that a human being was unlawfully killed, the defendant perpetrated the killing, and that the defendant acted with malice and a specific intent to kill." *Commonwealth v. Burno*, 94 A.3d 956, 969 (Pa. 2014) (citation omitted), *cert. denied*, 574 U.S. 1193 (2015). It is well settled that "[s]pecific intent to kill can be established through circumstantial evidence, such as the use of a deadly weapon on a vital part of the victim's body[.]" *Commonwealth v. Jacoby*, 170 A.3d 1065, 1076 (Pa. 2017) (citation omitted), *cert. denied*, ___ U.S. ___, 139 S.Ct. 58 (2018).

A person will be found guilty of the crime of burglary if, "with the intent to commit a crime therein, the person … enters a building or occupied structure, or separately secured or occupied portion thereof, that is adapted for overnight accommodations in which at the time of the offense any person

is present and the person commits, attempts or threatens to commit a bodily injury crime therein[.]"  18 Pa.C.S.A. § 3502(a)(1)(1).

The crime of carrying a firearm without a license is codified in Section 6106 of the Pennsylvania Uniform Firearms Act and provides, in relevant part, as follows:

> [A]ny person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

18 Pa.C.S.A. § 6106(a)(1).

"[N]on-licensure is the essential element of the crime of carrying a firearm without a license, and … the Commonwealth has the burden of establishing this element beyond a reasonable doubt." **Commonwealth v. Woods**, 638 A.2d 1013, 1016 (Pa.Super. 1994), **appeal denied**, 651 A.2d 537 (Pa. 1994).

Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we conclude that the Commonwealth presented overwhelming direct and circumstantial evidence to support Appellant's convictions for first-degree murder, burglary, and carrying a firearm without a license.

The record establishes that on the day in question, Appellant entered the victim's residence through a closed window in the kitchen with the intent to commit a burglary.  When Appellant he encountered the victim, he shot

him three times in the chest and one time in the face, killing him. Notes of testimony, 6/8/21 at 46-54, 138-144, 158-160; Notes of testimony, 6/9/21 at 294-296, 313.

Testimony at trial established that Appellant was observed outside the victim's residence moments after shots were fired wearing a blood-splatted yellow hoodie, one orange and black size 6 Nike shoe, and bleeding from a cut to his lip. Notes of testimony, 6/8/21 at 67, 71-82. When encountered by UPMC security personnel, Appellant fled the scene into a nearby wooded area where he ultimately discarded both his remaining shoe and the blood-stained hoodie. *Id.* at 94-96. Appellant subsequently fled from law enforcement after they observed him emerging from the same wooded area without a shirt or shoes. Notes of testimony, 6/9/21 at 119-123.

The record further establishes that tests on the discarded hoodie revealed that it contained blood spatter containing Appellant's DNA as well as the victim's DNA. *Id.* at 405-407. The cuffs and front panel of the discarded hoodie, as well as Appellant's hands, also contained evidence of gunshot residue. *Id.* at 356, 361-362, 366-367, 370-372. Additionally, the orange and black size 6 Nike shoe found discarded in the wooded area matched the one found at the crime scene in close proximity to the victim's body. Notes of testimony, 6/8/21 at 172-174; Notes of testimony, 6/9/21 at 285. Lastly, the testimony at trial established that Appellant did not have a license to carry a firearm. Notes of testimony, 6/8/21 at 202.

Based on the foregoing, we find that the trial court properly denied Appellant's motion for judgment of acquittal at the close of the Commonwealth's case and established that there was sufficient evidence to sustain his convictions. Appellant's claim to the contrary is wholly frivolous.

Finally, our independent review of the entire record, as required pursuant to **Anders**, reveals no additional non-frivolous claims. **Yorgey**, 188 A.3d at 1195. Accordingly, we grant Counsel's petition to withdraw and affirm Appellant's October 7, 2021 judgment of sentence.

Petition to withdraw granted. Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

10/24/2023

- 12 -